IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREL ALVAREZ and JUAN TELLADO, individually and on behalf of all persons similarly situated, | Civil Action No.: |
| | Complaint — Class & Collective Action |
| Plaintiff, | Jury Trial Demanded |
| v. | |
| BI INCORPORATED, | |
| Defendant. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Karel Alvarez ("Alvarez") and Juan Tellado ("Toledo") (collectively, "Plaintiffs"), through their undersigned counsel, individually and on behalf of all persons similarly situated, file this Class and Collective Action Complaint against Defendant BI Incorporated ("Defendant" or "BI"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and Pennsylvania law. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1. Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. The events giving rise to Plaintiffs' claims occurred within this District, Defendant is incorporated in Pennsylvania

1

and Defendant conducts business in this District.

## PARTIES

4. Plaintiff Karel Alvarez currently resides in Morristown, New Jersey. Mr. Alvarez works for Defendant as an Intensive Supervision Appearance Program ("ISAP") Case Specialist in New Jersey. Mr. Alvarez worked for Defendant as an ISAP Case Specialist in Philadelphia, Pennsylvania between July 2012 and November 2015. Pursuant to 29 U.S.C. § 216(b), Mr. Alvarez has consented to be a Plaintiff in this action. *See* Ex. A.

5. Plaintiff Juan Tellado currently resides in Philadelphia, PA. Mr. Tellado worked for Defendant as an ISAP Case Specialist in Philadelphia, Pennsylvania between January 2014 and January 2015. Pursuant to 29 U.S.C. § 216(b), Mr. Tellado has consented to be a Plaintiff in this action. *See* Ex. B.

6. Defendant BI Incorporated ("Defendant" or "BI") is a corporation that maintains its operational headquarters in Boulder, Colorado and is incorporated in Pennsylvania. BI is a wholly-owned subsidiary of The GEO Group, Inc. ("GEO Group"). The GEO Group is "a global leader in the delivery of correctional, detention, and residential treatment services to federal, state, and local government agencies." *About Us*, BI Inc., http://bi.com/company/about-us/ (last visited Jan. 29, 2016).

7. BI offers offender monitoring products and services that help federal, state, and local agencies monitor parolees, probationers, pretrial defendants, and illegal aliens involved in the U.S. immigration court process as they live in the community. BI provides these monitoring services and technical support to its clients twenty-four (24) hours per day, seven (7) days per week.

8. BI employs individuals, including ISAP Case Specialists, throughout the United

States, including in this District, to monitor individuals participating in ISAP.

9. In particular to this matter, BI supports the U.S. Department of Homeland Security ("DHS") to operate ISAP. BI provides case management, supervision services, and location monitoring systems for individuals in immigration proceedings.

10. BI employed Plaintiffs and has employed and continues to employ similarly situated employees.

11. BI employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person as required by 29 U.S.C. §§ 206-207.

12. BI's annual gross volume of sales made or business done exceeds $500,000.

## CLASS DEFINITIONS

13. Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following class:

> All current and former ISAP Case Specialists employed by BI Incorporated who performed work in the United States between June 2, 2013 and the present (the "FLSA Class").

14. Plaintiffs bring Counts II and III of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of themselves and the following class:

> All current and former ISAP Case Specialists employed by BI Incorporated who performed work in Pennsylvania between June 2, 2012[1] and the present (the "Pennsylvania Class").

15. The FLSA Class and the Pennsylvania Class are together referred to as the "Classes."

---

[1] The statute of limitations on Plaintiffs' unjust enrichment claim is four (4) years. Therefore, employees may be members of the Pennsylvania Class if they were employed on or after May 12, 2012, for at least one of the claims alleged on behalf of the Pennsylvania Class.

16. Plaintiffs reserve the right to redefine the Classes prior to notice or class certification, and thereafter, as necessary.

**FACTS**

17. BI is a company that offers offender monitoring products and services that help federal, state, and local agencies monitor parolees, probationers, pretrial defendants and alleged illegal aliens involved in the U.S. immigration court process as they live in the community. BI employs individuals, including ISAP Case Specialists throughout the United States, including in this District, to monitor individuals participating in ISAP.

18. In 2011, BI's ISAP Case Specialists were active in approximately forty (40) locations around the United States and supervised approximately 35,380 participants. *See Immigration Detention: How Can the Government Cut Costs?*, Human Rights First, http://www.humanrightsfirst.org/sites/default/files/Immigration-Detention-cutting-cost-jan2014.pdf (last visited May 4, 2016).

19. Since 2011, the number of ISAP Case Specialists and supervised participants has grown.

20. BI also provides case management, supervision services, and location monitoring systems for individuals in immigration proceedings.

21. Between July 2012 and November 2015, Mr. Alvarez was employed as an ISAP Case Specialist with BI in Philadelphia, Pennsylvania. On or around November 2015, Mr. Alvarez was laterally transferred by BI to work in Newark, New Jersey.

22. Between January 2014 and January 2015, Mr. Tellado was employed as an ISAP Case Specialist with BI in Philadelphia, Pennsylvania.

23. BI employs ISAP Case Specialists, such as Plaintiffs and the Class Members, to

develop, implement, and coordinate individual service plans for ISAP participants in conformance with state and federal regulations and contractual obligations in order to ensure that participants appear at immigration hearings and comply with final orders of removal.

24. In particular, an ISAP Case Specialist monitors the participants through face-to-face meetings in the office, and conducts field visits using a BI vehicle to drive to the participant's home and workplace to install and monitor electronic monitoring equipment on the participant. ISAP Case Specialists must report program violations in a timely manner pursuant to established reporting procedures. Further, the ISAP Case Specialist must develop and maintain accurate and complete case records for all ISAP participants from entry into and exit from the program.

25. Plaintiffs and Class Members were regularly scheduled to work a forty (40) hour workweek.

26. ISAP Case Specialists report directly to their ISAP Program Manager.

27. Pursuant to BI's staffing policies, each ISAP Case Specialist is to be assigned no more than eighty-one (81) participants at any given time.

28. For example, Mr. Alvarez on average is assigned approximately eighty (80) to one hundred and ten (110) participants. Mr. Tellado was assigned to approximately ninety-five (95) to one hundred and two (102) participants.

29. ISAP Case Specialists, such as Plaintiffs, all work in BI's offices throughout the United States and perform their services at BI's offices and in the field.

30. ISAP Case Specialists are non-exempt for overtime purposes.

31. In actuality, Plaintiffs and Class Members regularly worked more than forty (40) hours per workweek in executing their duties with on call work, off-the-clock work, and home

visits, for which they were not properly compensated.

### On Call Work

32. Plaintiffs and Class Members were required to be "on call." On call work was completed Monday through Monday between the hours of 5:00 p.m. to 8:00 a.m.

33. BI assigned on call work in addition to ISAP Case Specialists' regularly scheduled forty (40) hours of work per week.

34. On call work required the ISAP Case Specialist to carry a pager or cellular telephone after work hours to monitor, screen, and respond to electronic monitoring alerts.

35. ISAP Case Specialists were required to make themselves easily and quickly accessible and had to respond to alerts and/or calls within ten minutes of receiving contact. The failure to respond within the set time frame subjected the ISAP Case Specialist to discipline pursuant to BI's policies and procedures.

36. An alert may be generated for a variety of reasons such as Beacon Alert; Strap Tamper; Exclusions Zone Enter; Master Zone Leave; Low Battery; Tracker Missed Call; Carrier Denied; Missed Check-in; or the GPS device is not working.

37. ISAP Case Specialists were required to take the following actions once an alert was generated, including but not limited to:

    a. Contact the participant to discuss the alert;

    b. Contact the participant's personal contacts if the participant was unavailable;

    c. Locate the device if monitored by GPS; and

    d. Document all actions and responses in chronological order and save the information into BI's database – TotalAccess.

All of these activities were not properly compensated by Defendant.

38. Plaintiffs and Class Members often receive dozens of alerts and/or calls each night that they carried the pager making it very difficult for the employee to sleep.

39. Plaintiffs and Class Members were unable to accurately record the time they spent actually working on call on the ISAP PAGER/ON-CALL SHEET. BI was aware of Plaintiffs' and Class Members' inability to accurately record their time. For example, on or about October 27, 2014, Mr. Alvarez brought the fact that he was unable to accurately record the time he spent actually working On Call on the ISAP PAGER/ON-CALL SHEET to BI's Human Resource Director to no avail.

40. BI paid Plaintiffs and Class Members by the hour for their regular forty (40) hour work schedule.

41. BI paid Plaintiffs and Class Members for half (1/2) an hour of their regular rate each day that they were on call, or $17.14 per day or $120.00 per week (7-day week beginning Monday and ending on Sunday), regardless of the hours actually worked.

42. However, Plaintiffs and Class Members who were required to carry a pager were required to respond but were not compensated for the hours they actually worked.

43. BI also paid Plaintiffs and Class Members an additional hourly pay labeled as "Health and Wellness." This additional pay is not in connection with any additional work performed. Further, the rate is not included in the regular rate in calculating overtime compensation.

44. For example, Mr. Alvarez was paid $3.71 per hour under the category of "Health and Wellness." This additional pay was not included in his regular rate used to calculate his overtime compensation. The same was true for all similarly situated ISAP Case Specialists.

45. ISAP Case Specialists are non-exempt for overtime purposes.

46. Plaintiffs routinely worked up to five (5) days per week and on average worked over eleven (11) hours per day, in addition to "On Call" work. Plaintiffs observed other Class Members routinely worked similar schedules.

47. Plaintiffs did not receive the proper overtime compensation premium for hours worked over forty (40) in a workweek.

48. For example, during weeks when Mr. Alvarez worked five (5) days per week, eleven (11) hours per day, between July 2012 and January 2015, he would work a total of approximately fifty-five (55) hours per week. In each of these weeks, he was not paid any overtime compensation.

49. Likewise, during weeks when Mr. Tellado worked five (5) days per week, eleven (11) hours per day, between January 2014 and January 2015, he would work a total of approximately fifty-five (55) hours per week. In each of these weeks, he was not paid any overtime compensation.

**Home Visits**

50. ISAP Case Specialists, as a part of their regularly assigned duties, had to routinely conduct home visits for each participant.

51. Home visits are conducted using BI's vehicles and equipment.

52. Home visits require the ISAP Case Specialist to scan the participant's ID card, enter the home and visually inspect for program violations, gather information on the people living at the residence, and discuss the next scheduled visit.

53. In preparation for the home visits, the ISAP Case Specialist uploads all relevant information (which includes the address, participant contact information, and the contact information of relevant individuals with ties to the participant) to their work phone using

TotalAccess.

54. The ISAP Case Specialist then uses mapping software to plan the home visit route. Home visits are generally started in the early a.m. (around 4:00 a.m. or 5:00 a.m.).

55. On the morning of the home visit, the ISAP Case Specialist enters the Defendant's vehicle and turns on the car, their employer provided phone, and GPS system to route to the participant's address.

56. The ISAP Case Specialist will then call and/or email the participant to make sure that they are home for the home visit.

57. If the ISAP Case Specialist does not hear back from the participant or is unable to make contact, the ISAP Case Specialist will then start to call and/or email the participant's contacts.

58. If the ISAP Case Specialist is unable to establish contact with the participant, the ISAP Case Specialist then reroutes to the next participant's address.

59. BI does not compensate ISAP Case Specialists for their time when they first scan the participants' ID during the first home visit, despite the fact that the ISAP Case Specialist engages in work right before or after entering BI's vehicle.

60. However, the first home visit participant scan may not happen until the ISAP Case Specialist travels to another location and scans the next participant on his list. For example, if the first home participant on the list is not at his residence and his identification cannot ultimately be scanned, ISAP Care Specialist must move on to the next participant on his list without being paid for his time attempting to scan the first participant on his list.

61. In other words, the ISAP Case Specialist is not compensated from the time they leave their house until the first scan, which averages approximately fifteen (15) minutes to an

hour, each home visit day.

62. ISAP Case Specialists conduct home visits every other week or as directed by Enforcement and Removal Operations.

**Off-the-Clock Work**

63. Plaintiffs often worked off-the-clock following their home visits and worked late in order to catch up on field reports and the massive volume of calls and alerts unrelated to on-call work. Plaintiffs observed that other Class Members routinely worked similar schedules and similarly worked off-the-clock. BI was aware of and permitted this practice.

64. Plaintiffs were provided with an hour for lunch, but routinely worked through their lunch period without extra pay. This also occurred, without limitation, on days when the Plaintiffs conducted home visits, which were conducted every day for approximately two (2) weeks per month. Plaintiffs observed other Class Members routinely worked similar schedules. BI was aware of and permitted this practice.

65. Plaintiffs and Class Members are required to complete daily, weekly, and monthly records on behalf of each assigned participant which detail the tasks performed and the total hours worked.

66. BI did not properly pay Plaintiffs and the Classes overtime compensation for hours worked in excess of forty (40) per workweek.

67. BI has acted willfully and/or with reckless disregard of the FLSA and state wage and hour laws by failing to pay for overtime compensation for hours worked in excess of forty (40) during the workweek at a rate of time and one half the ISAP Case Specialists' regular rate.

**COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

68. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action

on behalf of the FLSA Class defined above.

69. Plaintiffs desire to pursue their FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

70. Plaintiffs and the FLSA Class are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to BI's previously described common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, BI's common compensation, timekeeping, and payroll practices applicable to ISAP Case Specialists.

71. Specifically, BI failed to pay overtime at time and a half (1½ times) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

72. The similarly situated employees are known to BI and are readily identifiable and may be located through BI's records and the records of any payroll companies that BI utilizes.

73. BI employs many FLSA Class Members throughout the United States. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

74. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Pennsylvania Class defined above.

75. The members of the Pennsylvania Class are so numerous that joinder of all

members is impracticable. Upon information and belief, there are more than forty (40) members of the Pennsylvania Class.

76. Plaintiffs will fairly and adequately represent and protect the interests of the Pennsylvania Class because there is no conflict between the claims of Plaintiffs and those of the Pennsylvania Class, and Plaintiffs' claims are typical of the claims of the Pennsylvania Class. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

77. There are questions of law and fact common to the proposed Pennsylvania Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether BI has violated and continues to violate Pennsylvania law through its policy or practice of not paying its ISAP Case Specialists proper overtime compensation for all hours worked.

78. Plaintiffs' claims are typical of the claims of the Pennsylvania Class in the following ways, without limitation: (a) Plaintiffs are members of the Pennsylvania Class; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Pennsylvania Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Pennsylvania Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the Pennsylvania Class Members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the Pennsylvania Class members.

79. Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Pennsylvania Class predominate over any questions affecting only individual Class members.

80. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Pennsylvania Class is readily identifiable from BI's employment records. Prosecution of separate actions by individual members of the Pennsylvania Class would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for BI.

81. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Pennsylvania Class members, while substantial, are not great enough to enable them to maintain separate suits against BI.

82. Without a class action, BI will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the Pennsylvania Class. Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT I
## Violation of the FLSA
## (On Behalf of Plaintiffs and the FLSA Class)

83. All previous paragraphs are incorporated as though fully set forth herein.

84. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

85. BI is subject to the wage requirements of the FLSA because BI is an "employer" under 29 U.S.C. § 203(d).

86. At all relevant times, BI is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

87. During all relevant times, Plaintiffs and the FLSA Class are covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

88. Plaintiffs and the FLSA Class are not exempt from the requirements of the FLSA. Plaintiffs and the FLSA Class are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

89. BI's compensation scheme applicable to Plaintiffs and the FLSA Class failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

90. BI knowingly failed to compensate Plaintiffs and the FLSA Class at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

91. BI also failed to make, keep, and preserve records with respect to Plaintiffs and the FLSA Class sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

92. In violating the FLSA, BI acted willfully and with reckless disregard of clearly applicable FLSA provisions.

93. Pursuant to 29 U.S.C. § 216(b), employers such as BI, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT II**
**Violation of the Pennsylvania Minimum Wage Act**
**(On Behalf Plaintiffs and the Pennsylvania Class)**

94. All previous paragraphs are incorporated as though fully set forth herein.

95. The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered employees be compensated for all hours worked. *See* 43 P.S. § 333.104(a) and 34 PA. CODE § 231.21(b).

96. The PMWA also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular hourly rate at which he is employed. *See* 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

97. BI is subject to the overtime requirements of the PMWA because BI is an employer under 43 P.S. § 333.103(g).

98. During all relevant times, Plaintiffs and the Pennsylvania Class were covered employees entitled to the above-described PMWA's protections. *See* 43 P.S. § 333.103(h).

99. BI's compensation scheme that is applicable to Plaintiffs and the Pennsylvania Class failed to comply with 43 P.S. §§ 333.104(a) and (c), 34 PA. CODE §§ 231.1(b) and 43(b).

100. BI failed to compensate Plaintiffs and the Pennsylvania Class at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

101. BI fails to accurately track all of the hours that Plaintiffs and the Pennsylvania Class work. *See* 43 P.S. § 333.108 and 34 PA. CODE § 231.31.

102. Pursuant to 43 P.S. § 333.113, employers, such as BI, who fail to pay an employee wages in conformance with the PMWA, shall be liable to the employee for the wages

or expenses that were not paid, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT III
## Unjust Enrichment
## (On Behalf of the Plaintiffs and the Pennsylvania Class)

103. All previous paragraphs are incorporated as though fully set forth herein.

104. BI has received and benefited from the uncompensated labors of Plaintiffs and the Pennsylvania Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

105. At all relevant times hereto, BI devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiffs and the Pennsylvania Class without properly paying compensation for all hours worked including overtime compensation.

106. Contrary to all good faith and fair dealing, BI induced Plaintiffs and the Pennsylvania Class to perform work while failing to properly compensate for all hours worked as required by law including overtime compensation.

107. By reason of having secured the work and efforts of Plaintiffs and the Pennsylvania Class without proper compensation as required by law, BI enjoyed reduced overhead with respect to its labor costs and therefore realized additional earnings and profits to its own benefit and to the detriment of Plaintiffs and the Pennsylvania Class. BI retained and continues to retain such benefits contrary to the fundamental principles of justice, equity and good conscience.

108. Accordingly, Plaintiffs and the Pennsylvania Class are entitled to judgment in an amount equal to the benefits unjustly retained by BI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

    a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

    b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class members;

    c. An order permitting this litigation to proceed as a class action pursuant to FED. R. CIV. P. 23 on behalf of the Pennsylvania Class;

    d. Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

    e. Liquidated and statutory damages to the fullest extent permitted under the law;

    f. Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

    g. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

Dated:  June 2, 2016

Respectfully submitted,

BERGER & MONTAGUE, P.C.

_____
Shanon J. Carson (PA 85957)
Sarah R. Schalman-Bergen (PA 206211)
Alexandra K. Piazza (PA 315240)
Camille Fundora (PA 312533)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net

sschalman-bergen@bm.net
apiazza@bm.net
cfundora@bm.net

Ryan Allen Hancock (PA 92590)
Bruce Ludwig (PA 23251)
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA  19103
Telephone: (215) 656-3600
Facsimile: (215) 567-2310
rhancock@wwdlaw.com
bludwig@wwdlaw.com

*Attorneys for Plaintiffs*