**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREL ALVAREZ & JUAN TELLADO,** | : | CIVIL ACTION |
| *Individually and on behalf of all persons* | : | |
| *similarly situated,* | : | |
| **Plaintiffs,** | : | No. 16-2705 |
| | : | |
| **v.** | : | |
| | : | |
| **BI INCORPORATED,** | : | |
| | : | |
| **Defendant.** | : | |

**Goldberg, J.**                                                                                          **April 6, 2020**

## MEMORANDUM OPINION

In this collective action under the Fair Labor Standards Act, Plaintiffs allege that their employer failed to pay them, and other similarly situated persons, for various categories of overtime and "off-the-clock" work. One hundred and three individuals have "opted in" to this action since it was filed. The parties have now reached a settlement and move for my approval.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendant BI Incorporated provides products and services to government agencies that monitor parolees, probationers, pretrial defendants, and the like. In 2004, Defendant was awarded a contract by U.S. Immigration and Customs Enforcement ("ICE") to monitor aliens released from ICE detention pending immigration proceedings. This program is called the Intensive Supervision Appearance Program ("ISAP").

---

[1]    The following facts are taken from the Complaint, Defendant's Answer, the parties' brief filed in connection with the instant motion, and the exhibits and declarations attached thereto.

Under the contract for this program, Defendant is responsible for completing specified tasks to monitor the participants that ICE designates for ISAP supervision. The required tasks include installing electronic monitoring equipment on participants and visiting with them—both at the participants' homes and at Defendant's offices.

To carry out these tasks, Defendant has employed a number of "ISAP Case Specialists." During the time period at issue, Defendant employed hundreds of ISAP Case Specialists in approximately 61 offices, located in 32 states. Each of these offices was led by an ISAP Program Manager, who supervised the ISAP Case Specialists assigned to that office.

Plaintiffs Karel Alvarez and Juan Tellado ("Named Plaintiffs") each worked as ISAP Case Specialists for Defendant. Named Plaintiff Alvarez was employed in Defendant's Philadelphia office from July 2012 through November 2015 and has since been employed in Defendant's office in Newark, New Jersey. Named Plaintiff Tellado was employed in Defendant's Philadelphia Office from January 2014 through January 2015.

Named Plaintiffs initiated this action on June 2, 2016, by filing a Class and Collective Action Complaint, claiming that Defendant failed to pay them—and other ISAP Case Specialists throughout the United States—wages and overtime compensation, in violation of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act.[2] Defendant answered the Complaint on August 30, 2016, denying Plaintiffs' allegations and asserting numerous defenses.

Plaintiffs allege that Defendant failed to pay them for the following three categories of compensable work:

1. "Off-the-clock" work, such as working though lunch breaks, which was allegedly required to meet the demands created by Plaintiffs' heavy workload;

---

[2] Plaintiffs have also asserted an unjust enrichment claim based on Defendant's alleged failure to pay wages and overtime compensation.

2. "On call" time—that is, time that Plaintiffs were allegedly required to be prepared to respond within minutes to an alert triggered by an ISAP participant;

3. Time related to visiting participants at their homes (referred to as "home visits"). Specifically, this was time spent commuting, in Defendant's vehicles, from the ISAP Case Specialists' own homes to the residence of the first ISAP participant to be visited during a given day; time spent reverse commuting home after a day's final home visit; and tasks undertaken in preparation for home visits, such as mapping out a route to the participants' homes, and uploading necessary information into their work phones.

On November 4, 2016, I ordered limited discovery on the issue of conditional certification of a collective action under the FLSA. Named Plaintiffs and four of Defendant's corporate designees were deposed and payroll data was produced. After receiving and considering Plaintiffs' class-wide damages analysis, Defendant agreed to stay deadlines in the case and toll the statute of limitations for ISAP Case Specialists for three months so that the parties could engage in settlement negotiations. These negotiations were unsuccessful.

On April 3, 2017, Named Plaintiffs filed a motion seeking conditional certification of a collective action under the FLSA and the issuance of a court-approved notice to other current and former ISAP Case Specialists. Defendant filed a motion for partial summary judgment on Plaintiffs' claims regarding home visits, which Plaintiffs urged me to defer consideration of until after discovery on the merits. On May 18, 2018, I granted Plaintiffs' motion, conditionally certifying a collective action under the FLSA, and authorizing that notice be sent to the 667 ISAP Case Specialists who performed work in the United States during the relevant period. I also denied without prejudice Defendant's Motion for Partial Summary Judgment until the completion of discovery on the merits.

Prior to notice being sent out to members of the collective action, the parties again agreed to toll the statute of limitations and participated in a full-day, private mediation. Defendant

provided Plaintiffs with data to calculate potential damages in advance of the mediation, but the parties did not reach a settlement.

Notice was then sent out to potential plaintiffs ("Opt-In Plaintiffs") pursuant to my May 18, 2018 Order. After notice was sent out, 91 individuals returned Opt-In Consent Forms to do the same. Ten individuals had already filed written Opt-In Consent Forms to join this lawsuit before conditional certification was granted. There are now a total of 103 Opt-In Plaintiffs in the lawsuit, including the two Named Plaintiffs.

## II.   THE PROPOSED SETTLEMENT AGREEMENT

On April 15, 2019, after continued negotiation, the parties reached an agreement in principal, which was reduced to a memorandum of understanding on May 1, 2019. The parties have now finalized the settlement and present the Settlement Agreement to me for approval under the FLSA.

The total settlement amount to be paid by Defendant to the 103 Opt-In Plaintiffs is $800,000. (Id. at ¶ II.S.) This amount includes (1) settlement awards to Opt-In Plaintiffs; (2) all applicable Federal Insurance Contributions Act and Federal Unemployment Tax Act payroll taxes; (3) service payments to Named Plaintiffs of $15,000 each for the services that they provided to the collective and as additional consideration for agreeing to a general release of all claims; and (4) $350,000 in attorneys' fees and costs to Plaintiffs' counsel. (Id.)

In exchange for these amounts, Plaintiffs agree to the dismissal of this lawsuit with prejudice and release all wage and hour claims, including but not limited to "claims under the FLSA and state law pertaining to the alleged failure to pay all hours worked, claims for unpaid wages (including overtime compensation), claims for working through meal or rest periods, and related claims for liquidated damages, interests, penalties, fees or costs. . . ." (Id. at ¶ III.F.1.a.)

The Agreement also requires Named Plaintiffs to provide a broader release of claims against Defendant in exchange for their service payments.  (Consent Mot., ECF No. 87-1, at 20.)

### III.    <u>LEGAL STANDARD</u>

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." <u>Davis v. Abington Mem'l Hosp.</u>, 765 F.3d 236, 241 (3d Cir. 2014) (quoting <u>Genesis Healthcare Corp. v. Symczyk</u>, 569 U.S. 66, 69 (2013)).  If employers violate the FLSA's minimum wage and overtime provisions, codified at 29 U.S.C. §§ 206 and 207, respectively, employers may be liable to affected employees "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  <u>Id.</u> (citing 29 U.S.C. § 216(b)).  "A suit brought on behalf of other employees is known as a 'collective action.'"  <u>Genesis Healthcare Corp.</u>, 569 U.S. at 69.

A collective action under the FLSA differs from a class action under Federal Rule of Civil Procedure 23, in that "the mere presence of [collective action] allegations does not automatically give rise to the kind of aggregate litigation provided for in Rule 23." <u>Halle v. W. Penn Allegheny Health Sys. Inc.</u>, 842 F.3d 215, 225 (3d Cir. 2016).  "Rather, the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs," who must, to pursue their claims, affirmatively choose to join in the collective action by filing a written opt-in notice with the court.  <u>Id.</u>; <u>see also</u> 29 U.S.C. § 216(b) (providing that "[n]o employee shall be a party plaintiff to [a collective] action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought").

Courts have identified two procedures for settling FLSA claims: (1) the Department of Labor can supervise the payment of unpaid minimum wages or overtime compensation pursuant

to 29 U.S.C. § 216(c); or (2) the district court can approve a settlement under 29 U.S.C. § 216(b). See Brumley v. Camin Cargo Control, Inc., Nos. 08–1798, 10–2461 and 09–6128, 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012); see also Bettger v. Crossmark, Inc., No. 13–2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015). [3]

In approving a settlement under 29 U.S.C. § 216(b), a court must determine that "the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" Brumley, 2012 WL 1019337, at *2 (quoting Lynn's Food Stores Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)); see also In re Chickie's & Pete's Wage & Hour Litig., No. 12–6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014); Cuttic v. Crozer–Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); Bredbenner v. Liberty Travel, Inc., No.s. 09-905, 09-1248, 09-4587, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011).

Courts generally break this analysis down into three elements: (1) whether the settlement resolves a bona fide dispute; (2) whether the terms of the agreement are fair and reasonable to the employees; and (3) whether the terms of the settlement otherwise frustrate the implementation of the FLSA. See, e.g., Clarke v. Flik Int'l Corp., No. 17-1915, 2020 WL 747067, at *2–3 (D.N.J. Feb. 14, 2020).

## IV.    DISCUSSION

### A.  Final Certification of the FLSA Collective

Before I discuss approval of the settlement, I must first consider final certification of the collective action. The United States Court of Appeals for the Third Circuit has approved a "practical approach to managing FLSA collective actions" that consists of two steps. Halle, 842 F.3d at 225. In my May 18, 2018 Order, I completed the first step and granted conditional

---

[3]     Because the parties have agreed not to pursue class action claims, Rule 23 does not apply, and I may grant approval of the settlement without holding a final fairness hearing.

certification of the FLSA collective.  Before approving the Settlement Agreement, I must now complete the second step and grant final certification of the collective action.  <u>See, e.g.</u>, <u>Bredbenner</u>, 2011 WL 1344745, at *17.

At the final certification stage, "after discovery, and with the benefit of a much thicker record than it had at the [conditional certification] stage, a court . . . makes a conclusive determination as to whether each plaintiff who has opted in is in fact similarly situated to the named plaintiff[s]."  <u>Symczyk v. Genesis Healthcare Corp.</u>, 656 F.3d 189, 192 (3d Cir. 2011), <u>rev'd on other grounds</u>, 569 U.S. 66 (2013).  "This second stage is less lenient, and the plaintiff bears a heavier burden" to demonstrate by a preponderance of the evidence that they satisfy the similarly situated requirement.  <u>Id.</u>; <u>see also</u> <u>Zavala v. Wal Mart Stores, Inc.</u>, 691 F.3d 527, 537 (3d Cir. 2012).  In making the determination, a court must consider various factors, such as "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief, and whether they have similar salaries and circumstances of employment."  <u>Keller v. TD Bank, N.A.</u>, Civ. No. 12–5054, 2014 WL 5591033, at *8 (E.D. Pa. Nov. 4, 2014) (quoting <u>Zavala</u>, 691 F.3d at 536).  In short, the Court must find "some common employer practice that, if proved, would help demonstrate a violation of the FLSA."  <u>Halle</u>, 842 F.3d at 226 (citing <u>Zavala</u>, 691 F.3d at 538).  "Plaintiffs may be found dissimilar based on the existence of individualized defenses."  <u>Keller</u>, 2014 WL 5591033, at *8.

Here, the parties have stipulated, for settlement purposes only, that Named Plaintiffs and Opt-In Plaintiffs are similarly situated for purposes of final certification.  The record supports this finding.  All Opt-In Plaintiffs represent that they worked as ISAP Case Specialists at Defendant's offices around the country for the relevant period (three years prior to conditional

certification of the FLSA collective). (See Consent to Join Forms of Opt-In Plaintiffs, ECF Nos. 20-22, 24, 27, 60-71, 84.) Plaintiffs have provided ample evidence, as set forth in greater detail in my May 17, 2019 Memorandum Opinion, that ISAP Case Specialists shared the same responsibilities, pay, training, and management structure. In addition to sharing these general characteristics, the record supports that for each of the categories of work that Plaintiffs claim went unpaid—off-the-clock work, on-call time, and time related to home visits—all ISAP Case Specialists were subject to the same official policies and unofficial practices. (See May 17, 2019 Memorandum Opinion, ECF No. 52 at 9-20.)

As such, I am satisfied, for purposes of the settlement, that Opt-In Plaintiffs are similarly situated and warrant final certification as an FLSA collective. See Galt v. Eagleville Hosp., 310 F. Supp. 3d 483, 492-3 (E.D. Pa. 2018) (finding opt-in members of FLSA collective to be similarly situated for purposes of settlement); Fein v. Ditech Financial, LLC, No. 5:16-cv-00660, 2017 WL 4284116, at **6-7 (E.D. Pa. Sept. 27, 2017) (same); Altnor v. Preferred Services, Inc., 197 F. Supp. 3d 746, 759-60 (E.D. Pa. 2016) (same).

## B. Bona Fide Dispute

I will now determine whether the Settlement Agreement warrants my approval. The first step in this analysis is whether the agreement resolves a bona fide dispute. A proposed settlement resolves a "bona fide dispute" when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," rather than "a mere waiver of statutory rights brought about by an employer's overreaching." Chickie's & Pete's, 2014 WL 911718, at *2 (quoting Lynn's Food, 679 F.2d at 1354). "Typically, Courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness." Kauffman v. U-Haul Int'l, Inc., 5:16-cv-04580, 2019 WL 1785453, at *2 (E.D. Pa. April 24,

2019). "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." Altnor, 197 F. Supp. 3d at 763. "[A] dispute concerning overtime pay owed to class members is precisely the type of dispute the FLSA is designed to address." Id.

The dispute in this case concerns whether Defendant failed to pay Plaintiffs, and other ISAP Case Specialists, for all hours worked and overtime compensation regarding "off-the-clock" work, including through lunch breaks, all time worked in commuting from their homes during required "home visits," and all hours worked during "on call" shifts. Defendant has denied liability for unpaid compensation and awareness of any alleged "off-the-clock" work. Additionally, Defendant raises issues that could limit recovery even if it did violate the FLSA. For instance, Defendant insists that any violations were not willful, which would limit Plaintiffs to a two-year recovery period,[4] and represents that it acted in good faith, which it claims would preclude an award of liquidated damages. For these reasons, I find that the settlement resolves a bona fide dispute between the parties.

### C. Fair and Reasonable Compensation Terms

Next, I consider whether the compensation terms of the Settlement Agreement are fair and reasonable. As other courts in this Circuit have done, I will look to the nine-factor test in Girsh, established for use in the Rule 23 class action context, for guidance. Girsh examines:

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

---

[4] The FLSA allows for a three-year limitations period for "willful" violations, in contrast to the ordinary two-year period. 29 U.S.C. § 255(a).

<u>Girsh v. Jepson</u>, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotation marks omitted).

After considering these factors, I find that approval of the Settlement Agreement's compensation terms is warranted. First, this matter is complex and expensive. This settlement was reached after years of hotly contested litigation, including the completion of substantial discovery, motions practice on conditional certification and partial summary judgment, and extensive settlement negotiations.

Second, the proposed allocation formula is also fair and reasonable. The Settlement Agreement provides for a *pro rata* division of damages to the 103 Opt-In Plaintiffs based on number of weeks worked during the relevant period, as determined by Defendant's personnel and payroll records. Each settlement award takes into account "the time period during which [Opt-In Plaintiffs] would be able to recover in litigation based on the states where they worked and the dates that they opted in to the litigation, as well as the relative strength of penalties available under California law for those Opt-In Plaintiffs who are releasing California state law claims." (Consent Mot., ECF. No. 87-1, at 17–18.) Those Opt-In Plaintiffs "who worked during the 'on call' period are receiving additional settlement shares for those workweeks in recognition of the fact that they may have additional claims for time worked during those periods." (<u>Id.</u> at 18.). "And each Opt-In Plaintiff is assured to receive a minimum of $100 to ensure that there is consideration for any release obtained." (<u>Id.</u>) These payments were negotiated based on "substantial investigation" by counsel, and "the review and analysis of documents produced by the Named Plaintiffs, Opt-In Plaintiffs, and Defendant during the litigation" in preparation for the settlement conference with the Honorable David R. Strawbridge and the mediation through JAMS. (<u>Id.</u> at 16 (citing Schalman-Bergen Decl. ¶ 19).)

Third, the parties also recognize that continuing with the litigation carries risks for either side in proving or defending against the claims at issue. Plaintiffs understand that (1) they risk not maintaining a collective through trial because a court may decertify or modify a collective at any time during the litigation if it proves to be unmanageable, (2) a trial on the merits would involve significant risks for Opt-In Plaintiffs as to both liability and damages due to the significant factual development required to prove this case, and (3) a Plaintiffs' verdict could be delayed by Defendant's appeal. By reaching a settlement at this time, the parties avoid the costs of a lengthy and complex trial, which would be both time-consuming and expensive.

Finally, while the parties do not provide a calculation of Plaintiffs' best possible recovery, counsel certifies that the negotiated settlement amount "'falls between the possibility of a complete defense victory on all claims and Plaintiffs' calculated potential damages.'" (Id. at 16 (quoting Schalman-Bergen Decl., ECF No. 87-5, ¶ 20).) More specifically, counsel certifies that "[t]he amounts payable to the Opt-In Plaintiffs approximates the unliquidated, unpaid overtime wages that would have been owed to the Opt-In Plaintiffs assuming Plaintiffs could demonstrate that each Opt-In Plaintiff worked approximately 1.5 hours off-the-clock every week during the Covered Period (a contention that Defendant vigorously disputed)." (Id.) These certifications support a finding that the settlement fund is reasonable, as compared to Plaintiffs' best possible recovery and in light of all the attendant risks of litigation.

### D.  Fair and Reasonable Service Award to Named Plaintiffs

In addition to the reasonableness of the settlement fund, I must also consider whether the requested service awards for Named Plaintiffs are fair and reasonable. The Settlement Agreement proposes that each Named Plaintiff receive $15,000 in addition to the amount that they stand to receive from the common fund as members of the FLSA collective.

Incentive awards, also known as "enhancement awards" or "service payments," are common in class actions that result in a common fund for distribution to the class. The Third Circuit has stated that incentive awards in the general, class action context exist "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation." Sullivan v. DB Investments Inc., 667 F.3d 273, 333 n. 65 (3d Cir. 2011).

An incentive award that comes out of the payment allocated for attorneys' fees need not be subject to intense scrutiny, because the interests of the public and the defendants are not directly affected. See In re Cendant Corp., Derivative Action Litig., 232 F. Supp. 2d 327, 344 (D.N.J. 2002) (citing In re Presidential Life Securities, 857 F. Supp. 331, 337 (S.D.N.Y. 1994)). But where the proposed incentive award comes out of the common fund independent of attorneys' fees, as it does here, the court must "carefully review" the request for fairness to other class members. See Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 257 (D.N.J. 2005). Such incentive awards "will not be freely distributed without a substantial basis to demonstrate that the individual provided services for the Class and incurred risks during the course of the litigation." Id. at 258.[5]

Here, I find that the proposed service awards to Named Plaintiffs are fair and reasonable for several reasons. First, the parties acknowledge that Named Plaintiffs took significant risk by coming forward to represent the interests of their fellow employees. See Sand v. Greenberg, No. 08-7840, 2011 WL 7842602, at *3 (S.D.N.Y Oct. 6, 2011). Named Plaintiffs risked not only

---

[5] To determine whether a proposed incentive award is proper, some courts have considered factors such as (1) "the risk to the plaintiff in commencing litigation, both financially and otherwise"; (2) "the notoriety and/or personal difficulties encountered by the representative plaintiff"; (3) "the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial"; (4) "the duration of the litigation"; and (5) "the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class." McGee v. Ann's Choice, Inc., No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014). For the reasons discussed above, I find that these factors favor approval of Named Plaintiffs' service awards.

their reputation in the community, but also in their field and with their current employers—especially Named Plaintiff Alvarez, who is still employed by Defendant. See Craig v. Rite Aid Corp., No. 08-2317, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013). Named Plaintiffs also worked with counsel to provide background information about their employment, Defendant's policies and procedures, and the allegations in the Complaint. They were both deposed, and each attended multiple mediation sessions. Finally, a service payment of $15,000 is in line with what the courts in this Circuit have approved in other FLSA collective and class actions.[6]

### E. Fair and Reasonable Attorney's Fee Award

The last term of the Settlement Agreement that I must review for its reasonableness is the requested attorney's fee award. Section 216(b) requires a court to allow, "in addition to any judgment awarded to the plaintiff or plaintiffs, . . . a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Judicial review is required in this context "'to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" Brumley, 2012 WL 1019337 at *9 (quoting Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009)).[7]

---

[6] See, e.g., Tavares v. S-L Distrib. Co., Inc., No. 13-1313, 2016 WL 1743268, at *9 (M.D. Pa. May 2, 2016) ($15,000 service award each to both named plaintiffs); Badia v. HomeDeliveryLink, Inc., Nos.12-6920,12-07097, 2015 WL 5666077, at *9 (D.N.J. Sept. 25, 2015) (service awards of $15,000 each to six named plaintiffs); Creed v. Benco Dental Supply, Co., No. 12-01571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) ($15,000 service award to named plaintiff); Foster v. Kraft Foods Grp. Inc., Nos. 09-00453,12-00205, 2013 WL 440992, at *2 (W.D. Pa. Jan. 15, 2013) (approved service awards of $15,000); In re Janney Montgomery Scott LLC Fin. Consultant Litig., No. 06–3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009) ($20,000 to each of the three named plaintiffs); Godshall v. Franklin Mint Co., No. 01-6539, 2004 WL 2745890, *4 (E.D. Pa. Dec.1, 2004) ($20,000 incentive approved each to two named plaintiffs).

[7] As a threshold matter, the recovery of attorneys' fees and costs in this case does not create a conflict of interest that could affect Plaintiffs' ultimate recovery. The attorneys' fees and costs were negotiated separately from the substantive terms of the Settlement Agreement and do not "come out of" or "decrease" the payment to Opt-In Plaintiffs. (Consent Mot., ECF No. 87-1, at 22.)

Courts within the Third Circuit generally apply the "percentage-of-recovery" method when assessing the reasonableness of an attorney's fee award. See, e.g., Mabry v. Hildebrandt, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015). "In this Circuit, the percentage of recovery award in FLSA common fund cases ranges from roughly 20–45%." Id. at *4 (collecting cases). After subtracting Plaintiffs' counsel's costs and expenses ($26,266.65) from the total requested fees ($350,000), I find that Plaintiffs' attorney's fee award ($323,733.35) falls well within the Third Circuit's range, accounting for approximately forty percent of the total recovery ($800,000).

The reasonableness of the attorneys' fee award is further supported by the extensive work counsel was required to perform in this matter. Plaintiffs' counsel has been heavily litigating this case since it was filed in June 2016, logging more than 1,161 hours of work. Those hours worked include: (1) defending and taking six depositions in Pennsylvania, Colorado, and Florida, (2) answering written discovery requests for multiple plaintiffs, and (3) reviewing thousands of documents. Plaintiffs' counsel also successfully obtained conditional certification in this matter, which resulted in a total of 103 Opt-In Plaintiffs joining the collective action.

Setting aside this work performed, the reasonableness of counsel's requested fee is additionally confirmed by considering the award that would have been permitted when applying the "lodestar" method. The Third Circuit recommends that "district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award." See, e.g., In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006). The lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). To determine the lodestar crosscheck, the requested fee award is divided by the lodestar calculation. In re AT&T, 455 F.3d at 164.

Here, the lodestar calculation is $555,291.50. (See Schalman-Bergen Decl., ECF No. 87-5, ¶ 36.) Dividing the requested attorneys' fees ($323,733.35)[8] by the lodestar calculation ($555,291.50) results in a lodestar crosscheck of approximately 0.58. This low multiplier confirms that the requested attorney's fee award is fair and reasonable under the FLSA. See, e.g., Martinez v. IFA Grp., Inc., No. 19-02247, 2019 WL 6133860, at *3 (E.D. Pa. Nov. 19, 2019). "A lodestar multiplier of less than one, like the lodestar multiplier here, reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval." Altnor, 197 F. Supp. 3d at 767 (internal quotation marks omitted).

### F. The Settlement Agreement Frustrates the Purpose of the FLSA

Finally, I turn to whether approval of the Settlement Agreement will frustrate the purpose of the FLSA. "The congressional purpose of the FLSA and the public's interest in the transparency of the judicial process" require district courts to scrutinize FLSA settlements for "the existence of side deals or other conditions not present on the face of the employer's offer, including constraints on employees beyond their full compensation under the FLSA." Brumley, 2012 WL 1019337, at *2 (internal quotation marks omitted); see also MacKenzie v. Kindred Hospitals East, LLC, 776 F.Supp.2d 1211, 1213 (M.D. Fla. 2003). "In practice, leaving an FLSA settlement to wholly private resolution conduces inevitably to mischief. An employer who pays less than the minimum wage or who pays no overtime has no incremental incentive to comply voluntarily with the FLSA, if, after an employee complains, the employer privately compromises the claim for a discount-an amount less than the full amount owed under the FLSA (plus, with savvy negotiation, a confidentiality agreement to preclude the spread to other employees of information about the FLSA)." Brumley, 2012 WL 1019337, at *2.

---

[8] Again, this total does not include the $26,266.65 in counsel's out-of-pocket costs and expenses. (Consent Mot., ECF No. 87-1, at 24.)

The Settlement Agreement at issue contains a few such "side deals"—the confidentiality clause and the release provisions. I address each of these provisions in turn below.

### 1. The Confidentiality Clause

The proposed confidentiality clause here states:

> The Parties and their counsel agree that they will not issue a press release, hold a press conference, make a public announcement (other than the filings with the Court or communications with Opt-In Plaintiffs), or initiate contact with a member of the press about this Lawsuit, the facts and allegations in the operative complaint or the proposed amended complaint, or the amount or terms of this Settlement Agreement. . . .
>
> If the Parties are contacted by the press about the Settlement, they will respond only that the case has been resolved. Nothing in this provision will affect the ability of Plaintiffs' Counsel to carry out their duties consistent with and as required by any other provision in this Settlement Agreement, or by the Court, or affect Plaintiffs' Counsel's attorney-client communications with the Opt-In Plaintiffs.

(Settlement Agreement, ECF No. 87-3, ¶ G.)

Implementation of this clause would not frustrate the purpose of the FLSA because the clause only bars Plaintiffs from discussing the settlement with the media—they are not otherwise barred from discussing the lawsuit with the employees of Defendant. See McGee, 2014 WL 2514582, at *3; Chickie's & Pete's, 2014 WL 911718, at *3. Employee rights under the FLSA have a "public-private character," which means that "the public, including current, former, or potential employees of a particular defendant, ha[ve] an interest in assuring that employee wages are fair." Li v. Family Garden II, Inc., No. 18-1325, 2019 WL 1296258, at *3 (E.D. Pa. Mar. 20, 2019). This principle has resulted in courts approving "truly 'limited,' or narrowly drawn, confidentiality or non-disparagement clauses only where the clauses did not prevent plaintiffs from discussing the settlements with defendants' employees." Mabry, 2015 WL 5025810, at *3; see also Sawyer v. Health Care Solutions at Home, Inc., No. 16-5674, 2019 WL 1558668, at *6

(E.D. Pa. Apr. 10, 2019); <u>Lyons v. Gerhard's, Inc.</u>, No. 14-6693, 2015 WL 4378514, at *5 (E.D. Pa. July 16, 2015). As such, I find that the parties' proposed confidentiality clause passes muster.

## 2. The Release Provisions

The Settlement Agreement includes two release categories—one pertaining to Opt-In Plaintiffs and one pertaining to Named Plaintiffs.

District courts reviewing proposed FLSA settlements frequently require litigants to limit the scope of waiver and release provisions to "claims related to the specific litigation." <u>Singleton v. First Student Mgmt. LLC</u>, No. 13-1744 JEI, 2014 WL 3865853, at *8-9 (D.N.J. Aug. 6, 2014); <u>see also</u> <u>Bettger</u>, 2015 WL 279754, at *8–9 (collecting cases). This is because "overly broad releases have no place in settlements of most FLSA claims." <u>Bright v. Mental Health Resource Center, Inc.</u>, No. 10-427, 2012 WL 868804, at *4 (M.D. Fla. Mar. 12, 2012). "The FLSA requires employers to pay, unconditionally, a worker's wages. Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages. This is unfair, and it provides employers with a windfall should some unknown claim accrue to the employee at a later time. Further, in the typical FLSA case, the indeterminate nature of general releases also prevents the Court from being able to evaluate the claims that have been waived by employees, thereby making a fairness determination difficult if not impossible." <u>Id.</u> (citing <u>Moreno v. Regions Bank</u>, 729 F. Supp. 2d 1346, 1351–52 (M.D. Fla. 2010)); <u>see also</u> <u>Kraus v. PA Fit II, LLC</u>, 155 F. Supp. 3d 516, 533 (E.D. Pa. 2016). Therefore, courts must closely examine FLSA settlements containing "pervasive" release provisions that "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." <u>Brumley</u>, 2012 WL 1019337, at *8.

As to the first release category at issue here, the Settlement Agreement requires Opt-In

Plaintiffs to release the following against Defendant and its related entities:

> [A]ll wage and hour claims, including but not limited to claims
> under the FLSA, Pennsylvania state law . . ., New York state law .
> . ., California state law . . ., or any other federal, state, or local
> wage and hour law, pertaining to the alleged failure to pay for all
> hours worked, claims for unpaid wages (including overtime
> compensation), claims for working through meal or rest periods,
> and related claims for liquidated damages, interests, penalties, fees
> or costs, based on any act or omission that occurred prior to and
> including the date of the Settlement Agreement, even if presently
> unknown, that were or could have been asserted in the Lawsuit
> based upon the facts alleged in the operative complaint or in the
> proposed amended complaint . . . .

(Settlement Agreement, ECF No. 87-3, ¶ II.F.1.a.)

Although this waiver is broad enough to cover wage and hour claims not raised in this

litigation, the release is limited to those claims that "were or could have been asserted" based

upon the facts alleged in the Complaint and the proposed Amended Complaint.  Because of this

limitation, I find that the release binding on Opt-In Plaintiffs does not frustrate the purposes of

the FLSA.  See, e.g., Kutz v. Cargill Cocoa & Chocolate, Inc., No. 19-0176, 2019 WL 5457776,

at *8 (M.D. Pa. Oct. 23, 2019) (approving the release language in an FLSA settlement agreement

because the language was "strictly limited to the release and discharge of claims asserted in the

lawsuit or claims that could have been asserted 'based upon the facts alleged in the Complaint or

the Amended Complaint'"); see also Sawyer, 2019 WL 1558668, at *5 n.4; Simancas v. Pa.

Soup & Seafood House, No. 17-1895, 2017 WL 7693355, at *1 n.1 (E.D. Pa. Nov. 21, 2017);

Altnor, 197 F. Supp. 3d at 764.

However, Named Plaintiffs' release is much broader and, therefore, raises concern.  The

parties state that, "in consideration for their service awards, the two Named Plaintiffs will

provide a broader general release" to Defendant and its related entities. (Consent Mot., ECF No.

87-1, at 12.) The terms of that release are as follows:

> [E]ach Named Plaintiff, individually and for himself and his successors, assigns, heirs, executors, administrators, agents, representatives, businesses, insurers, subrogees, attorneys, and any other person or entities acting by, through, under or in concert with any of them, does hereby irrevocably and unconditionally release, acquit, and forever discharge Defendant and all Released Persons from any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorney's fees, expenses, costs actually incurred, liquidated damages and interest), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Defendant or any of the Released Persons, arising out of any matter occurring or accruing on or at any time before the date each Named Plaintiff signs this Settlement Agreement. This release and waiver includes, but is not limited to, any claims arising from each Named Plaintiff's employment and/or contractual relationship, or the termination of his employment and/or contractual relationship (if applicable), with Defendant and/or any of the Released Persons. This release and waiver includes, but is not limited to: claims arising under federal law, including claims under the Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, the Fair Labor Standards Act; claims arising under the laws of any state, including any local law, regulation, statute and/or ordinance operational in any state; claims arising under common law, tort, policy or contract; claims for retaliation, defamation, libel, slander, invasion of privacy, or negligence; claims based on theories of strict liability or respondeat superior; claims for costs, fees, interest, expenses, or attorney's fees; claims that were asserted or that could have been asserted in this Lawsuit; and any other claims of any kind, except as expressly excluded elsewhere in this Settlement Agreement[.]
>
> Notwithstanding the foregoing provisions of Section III.F.2.a., each Named Plaintiff does not release or waive: (i) any claim under the Age Discrimination in Employment Act; (ii) any claim that he could make for unemployment compensation or workers' compensation benefits; (iii) any rights or claims that cannot be released as a matter of law pursuant to this Settlement Agreement and/or the Approval Order; (iv) his right to file an administrative charge with the National Labor Relations Board, Equal Employment Opportunity Commission or similar state agency

(although he does waive his right to receive any monetary damages or other relief not explicitly provided for herein as a result of any such charge, to the extent the charge pertains to a claim that was released); and/or (v) any rights or claims that may arise after the date he signs this Settlement Agreement.

(Settlement Agreement, ECF No. 87-3, ¶ III.F.2.a.)

District courts in this Circuit and others have repeatedly excluded similarly broad general release provisions that extend beyond the claims related to the specific litigation as pervasive and, therefore, unreasonable. See, e.g., Kraus, 155 F. Supp. 3d at 533; Howard v. Phila. Housing Auth., 197 F. Supp. 3d 773, 779 (E.D. Pa. 2016); Bettger, 2015 WL 279754, at *8–10; Brumley, 2012 WL 1019337, at *8; see also Berger v. Bell-Mark Technologies Corporation, No. 17-1836, 2019 WL 1922325, at *5 (M.D. Pa. April 30, 2019); Giannattasio v. Excellent Pancake, Inc., 2018 WL 3913109, at *2–3 (E.D. Pa. Aug. 15, 2018).[9]

The cases of Otey v. CrowdFlower, Inc. and Sanders v. CJS Solutions Group, LLC are particularly instructive here. In both cases, plaintiffs bringing FLSA collective actions on behalf of similarly situated individuals, like the Named Plaintiffs here, received service or incentive awards above and beyond the payment made to settle their claims. Sanders v. CJS Solutions Grp., LLC, No. 17-3809, 2018 WL 620492, at *3 (S.D.N.Y. Jan. 30, 2018); Otey v. CrowdFlower, Inc., No. 12-5524, 2014 WL 1477630, at *2–3 (N.D. Cal. April 15, 2014). In exchange, these named plaintiffs agreed to provide a broader release of liability to the defendant employers. Id. But, in both cases, the release in question was found to be too broad. Id.

Similar to Named Plaintiffs, the representative plaintiffs in Otey agreed to release "any claims arising out of or connected with employment, known or unknown, including but not

---

[9] See, e.g., Thallapaka v. Sheridan Hotel Associates LLC, No. 15-1321, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015); Gambrell v. Weber Carpet, Inc., No. 10–2131, 2012 WL 5306273, at *5–6 (D. Kan. Oct. 29, 2012); Bright, 2012 WL 868804, at *4; Moreno, 729 F. Supp. 2d at 1351–52; Bond v. Ferguson Enterprises, Inc., No. 09-1662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011).

limited to all matters in law, in equity, in contract, or in tort, or pursuant to statute." Otey, 2014 WL 1477630, at *3. The court found this language to be overly broad and, therefore, improper because it encompassed claims that were unrelated to those asserted in the complaint. Id. at *6–7.

In Sanders, the representative plaintiffs, also like Named Plaintiffs here, agreed to "generally release and discharge [defendant] . . . finally, forever and with prejudice, from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses and issues of any kind or nature whatsoever, whether known or unknown, that Named Plaintiffs have or may have against [Defendant] that arose prior to the date on which they execute this [Settlement] Agreement." Sanders, 2018 WL 620492, at *3 (internal quotation marks omitted). In analyzing this provision, the court reasoned that it could not approve FLSA settlements "containing an 'overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." Id. at *4 (quoting Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015)). The court found this to be "especially true where 'the releases [a]re not mutual and protect[] only the defendants.'" Id. (quoting Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, No. 13-5008, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). "Even where releases affect only named plaintiffs, courts . . . have rejected overly broad releases as part of their duty to 'police unequal bargaining power between employees and employers.'" Id. (quoting Lopez v. Poko-St. Ann L.P., 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016)).[10]

---

[10]     It is important to note Selk v. Pioneers Memorial Healthcare District, in which the court found that a general release of claims in a separate settlement agreement with the representative plaintiff, Selk, was not "problematic" because he received a separate "release" payment in consideration for waiving his potential claims. 159 F. Supp. 3d 1164, 1179 (S.D. Cal. 2016). Selk is distinguishable from this case in

The parties in <u>Sanders</u> later submitted a revised settlement agreement, addressing the deficiencies identified by the court. <u>Sanders v. CJS Solutions Grp., LLC</u>, No. 17-3809, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018). The court ultimately accepted this revised release, because, although still non-mutual, it had been limited to waiving, "only those complaints 'that were or could have been asserted' in this action." <u>Id.</u>

Here, I find that Named Plaintiffs' release, which protects only Defendant, is pervasive and overbroad. <u>Id.</u> The release language at issue bears a striking resemblance to the language rejected by the courts in <u>Otey</u> and <u>Sanders</u>. Named Plaintiffs' release requires them to waive "any and all . . . claims . . . of any kind . . . arising out of any matter occurring or accruing on or at any time before the date each Named Plaintiff signs this Settlement Agreement." This waiver also includes "but is not limited to: claims arising under federal law, including claims the Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, the Fair Labor Standards Act; claims arising under the laws of any state, including any local law, regulation, statute and/or ordinance

---

two important ways. First, Selk received a separate "release" payment (in addition to a service award) as consideration for a broader release. <u>Id.</u> Therefore, Selk agreed to a specific valuation of his potential claims. No such valuation or "release" payment exists here. The parties' single-sentence explanation for the broader release provides that, in addition to the consideration for their service, some unidentified amount of Named Plaintiffs' lump sum service award is meant to be consideration for the broader release of claims.

The second, and more important, distinguishing factor between this case and <u>Selk</u> is that the court in <u>Selk</u> found the broad release to be "particularly defensible" because Selk had potential non-FLSA claims against the defendant, such as retaliation, discrimination, harassment, and workers compensation, that were outside the scope of the litigation. <u>Id.</u> (citing the declaration of the plaintiff's counsel). The court noted that Selk's separate "release" payment was being offered "with these potential claims in mind." <u>Id.</u> <u>Selk</u> supports this reasoning with the holding in <u>Gaspar v. Pers. Touch Moving, Inc.</u>, No. 13-8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015), in which the court found a broad release to be appropriate "where the named plaintiff had non-FLSA claims that he did not share with other plaintiffs and received a separate payment to relinquish those claims." <u>Id.</u> It is under these specific circumstances that the <u>Selk</u> court found the broader release to be acceptable. <u>Id.</u> Here, Named Plaintiffs bring only FLSA and state wage and hour claims, and the parties fail to identify any viable claim outside of this context for which Named Plaintiffs will be compensated.

operational in any state; claims arising under common law, tort, policy or contract; claims for retaliation, defamation, libel, slander, invasion of privacy, or negligence; claims based on theories of strict liability or respondeat superior . . . and any other claims of any kind, except as expressly excluded elsewhere in this Settlement Agreement."

The parties offer a single sentence, without cite to any precedent, in explanation for this broad release: "[I]n consideration for their service awards, the two Named Plaintiffs will provide a broader general release to the Released Parties."  (Consent Mot., ECF No. 87-1, at 12.)  Yet, I have approved *service* awards to Named Plaintiffs in consideration for exactly that, their service in prosecuting the action and for the risks they have incurred.  I am otherwise without knowledge as to the value of the non-FLSA claims Named Plaintiffs have waived in consideration for their service awards.  See Howard, 197 F. Supp. 3d at 780 (citing Bettger, 2015 WL 279754, at *8)).  More specifically, the indeterminate nature of Named Plaintiffs' release not only prevents me from evaluating the non-FLSA claims that they have waived, but also potentially provides Defendant with a windfall should some unknown claim later accrue.  This makes my fairness determination difficult, if not impossible, and runs contrary to the history and policy of the FLSA.  See, e.g., Bright, 2012 WL 868804, at *4; Gambrell, 2012 WL 5306273, at *5–6; see also Cruz v. JMC Holdings, Ltd., No. 16-9321, 2019 WL 4745284, at *7 (D.N.J. Sept. 30, 2019). The parties fail to address these concerns in their motion.

I cannot ignore the overwhelming disfavor of such broad general release provisions in FLSA collective actions.  The $15,000 service awards to Named Plaintiffs do not relieve me of my duty to police unequal bargaining power between employees and employers.  As such, I decline to approve the Named Plaintiffs' release provision as drafted because it frustrates the

purpose of the FLSA.[11]  Like the <u>Sanders</u> court, I will, however, allow the parties to submit a revised release, addressing the concerns raised in this Opinion.

**V.**     <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' Unopposed Motion for Approval of the Settlement Agreement and Attorneys' Fees and Costs is denied without prejudice.

An appropriate Order follows.

---

[11]     I note that the parties cite <u>Young v. Tri County Security Agency, Inc.</u> to support my approval of Named Plaintiffs' incentive awards.  In <u>Young</u>, the court approved an FLSA collective and class action settlement, in which the representative plaintiff received an incentive award as consideration, in part, for providing a general release of potential claims.  <u>Young v. Tri County Security Agency, Inc.</u>, No. 13-5971, 2014 WL 1806881 (E.D. Pa. May 7, 2014).  I choose not to follow <u>Young</u>'s approval of this general release for several reasons.  First, <u>Young</u> is not binding on me and, therefore, holds only persuasive value.  Second, the <u>Young</u> court did not engage in any discussion of the release provisions in the settlement agreement and whether those provisions frustrated the purpose of the FLSA—an analysis conducted by most courts within this Circuit.  Finally, I cannot ignore the many cases that reject general release provisions in FLSA collective actions, specifically those cases involving release provisions binding on named plaintiffs.