# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **KAREL ALVAREZ and JUAN TELLADO,** | : | **CIVIL ACTION NO.: 2:16-cv-02705-MSG** |
| **individually and on behalf of all persons** | : | |
| **similarly situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BI, INCORPORATED,** | : | |
| | : | |
| **Defendant.** | : | |

## SETTLEMENT AGREEMENT

Plaintiffs Karel Alvarez and Juan Tellado (together, "Named Plaintiffs"), on behalf of themselves and the Opt-In Plaintiffs, and Defendant BI, Incorporated ("BI" or "Defendant") hereby agree to the following binding settlement of the collective action lawsuit captioned *Alvarez, et al. v. BI, Incorporated,* No. 2:16-cv-02705-MSG (E.D. Pa.).

## I.    RECITALS

A.    On or about June 2, 2016, Named Plaintiffs filed a Complaint against BI. In their Complaint, Named Plaintiffs asserted claims against Defendant under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and Pennsylvania law, alleging that they and other Intensive Supervision Appearance Program ("ISAP") Case Specialists were not paid for all hours worked, including overtime compensation for hours worked in excess of forty (40) hours per week.

B.    Named Plaintiffs filed their claims on behalf of themselves and other individuals who had been employed by Defendant as ISAP Case Specialists. Named Plaintiffs sought, *inter alia*, unpaid wages (including minimum wage and overtime compensation), liquidated damages, interest, attorney's fees, expenses, and costs.

C.    On or about June 2, 2016, Named Plaintiffs filed written Opt-In Consent Forms to join this Lawsuit pursuant to 29 U.S.C. § 216(b).

D.    On March 31, 2017, the Parties participated in settlement conference with Eastern District of Pennsylvania Magistrate Judge David R. Strawbridge, but the Parties did not reach an amicable resolution of this dispute.

E.    On May 18, 2018, the Court granted Named Plaintiffs' motion for conditional certification of their FLSA claims on behalf of ISAP Case Specialists employed by Defendant in the United States on or after March 18, 2015.

F.     After the filing of the Complaint in this action, but before the Court granted conditional certification, ten (10) individuals filed written Opt-In Consent Forms to join this Lawsuit pursuant to 29 U.S.C. § 216(b).

G.     After notice was sent, a total of 91 individuals returned and filed written Opt-In Consent Forms to join the Lawsuit pursuant to 29 U.S.C. § 216(b).

H.     There are a total of 103 individuals who have joined the Lawsuit by filing written Opt-In Consent Forms.

I.     Throughout the course of this Lawsuit, the Parties exchanged information and documents through formal and informal discovery. Specifically, the Parties each issued and responded to written discovery. The discovery requests in this Lawsuit cumulatively resulted in the production of thousands of pages of documents, all of which were examined in detail by counsel for the Parties. Defendant took the depositions of Named Plaintiffs on December 14 and 15, 2016. Named Plaintiffs took the Federal Rules of Civil Procedure Rule 30(b)(6) depositions of four of Defendant's corporate designees on January 19, 24, and 27, 2017. The Parties conducted an extensive and detailed legal and factual analysis of the claims of Named Plaintiffs and Opt-In Plaintiffs, and Defendant's defenses.

J.     By filing their written consents to join this Lawsuit, the Opt-In Plaintiffs expressly agreed to opt-in to this Lawsuit and to be bound by any judgment of the Court or any settlement of the Lawsuit.  The Opt-In Plaintiffs also expressly authorized Named Plaintiffs and Plaintiffs' Counsel as their agents to prosecute this Lawsuit on their behalf and, as appropriate, to negotiate a settlement of any and all claims the Opt-In Plaintiffs have against Defendant in this Lawsuit.

K.     On September 5, 2018, the Parties participated in a full-day mediation, which was conducted by Hon. Diane M. Welsh (Ret.), but the Parties did not reach a settlement.

L.     The Parties continued their arms-length settlement negotiations in good faith in an effort to reach an amicable resolution of their disputes in this Lawsuit. On or about April 15, 2019, the Parties' efforts resulted in a negotiated agreement in principal to resolve the Lawsuit, the material terms of which they subsequently reduced to a Memorandum of Understanding on or about May 1, 2019.

M.     In exchange for (a) the dismissal of this Lawsuit with prejudice; (b) the settlement and release of all claims as defined in Section III.F herein against all Released Persons; and (c) otherwise subject and pursuant to the terms and conditions of this Settlement Agreement, Defendant agree to pay an amount not to exceed the Total Settlement Amount.

N.     It is the intention of the Parties that this Settlement Agreement shall constitute a full and complete settlement and release of the claims set forth in Section III.F against all Released Persons.

O.     Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendant in this Lawsuit, conducted interviews with Named Plaintiffs and Opt-In Plaintiffs, obtained and reviewed documents relating to Defendant's compensation policies and practices for ISAP Case Specialists, analyzed payroll data, and participated in discovery including multiple

depositions in three different states. Based on their independent investigation, analysis, and evaluation of a number of factors, including among others the substantial risks of litigation, Plaintiffs' Counsel are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Named Plaintiffs and Opt-In Plaintiffs in light of all known facts and circumstances, including the risk of delay and numerous potential certification, merits, and appellate issues.

P.      Together with Plaintiffs' Counsel, Named Plaintiffs covenant and represent that they are the duly-authorized legal agents for all Opt-In Plaintiffs with respect to the Lawsuit and this Settlement Agreement, and that they have the legal right and authority to make decisions on their behalf concerning the Lawsuit, the method and manner of conducting the Lawsuit, and the execution of this Settlement Agreement on behalf of all Opt-In Plaintiffs.

Q.      Defendant denies all of the material allegations made by Named Plaintiffs and Opt-In Plaintiffs in this Lawsuit, denies that it is liable or owes damages with respect to the alleged facts or causes of action asserted in this Lawsuit, and contends that Named Plaintiffs and Opt-In Plaintiffs were properly paid for all hours worked under federal and state law. This Settlement Agreement reflects a compromise of disputed claims. By entering into the Settlement Agreement, Defendant does not admit any liability or wrongdoing and expressly denies the same. Nothing in the Settlement Agreement or in the Parties' efforts to secure an amicable resolution of this dispute may be construed or deemed as an admission by Defendant of any liability, culpability, negligence, or wrongdoing. This Settlement Agreement shall not be admissible as evidence in any proceeding, except as necessary to approve, interpret, or enforce this Settlement Agreement.

R.      The Parties shall request the Court to approve the Settlement Agreement with respect to all actions and claims settled in this Settlement Agreement. The Parties agree not to prosecute any discovery issues, pending the approval of this Settlement Agreement.

S.      This Settlement Agreement is contingent upon the approval of the Court and the satisfaction of the other terms set forth in this Settlement Agreement. Plaintiffs and BI agree and stipulate that final certification of this FLSA collective action is proper for settlement purposes, on behalf of a collective of all Opt-In Plaintiffs. Should this Settlement not become final, the stipulation to final certification shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not final certification would be appropriate in a non-settlement context.  BI expressly reserves its right to challenge the ongoing certification of this action as a collective action and/or to litigate the claims asserted by Named Plaintiffs and Opt-In Plaintiffs on the merits, should the Court not approve this Settlement Agreement and/or enter an Approval Order.

T.      In consideration of the mutual covenants and promises set forth in this Settlement Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Lawsuit on the following terms and conditions.

## II.     DEFINITIONS

A.      "Approval Order" refers to an order of the Court: (i) granting approval of this Settlement Agreement on the terms provided herein (or as the same may be modified by

subsequent mutual agreement of the Parties or the Court), adjudicating such terms to be a reasonable resolution of a *bona fide* dispute; (ii) dismissing the Lawsuit with prejudice; and (iii) barring Named Plaintiffs and Opt-In Plaintiffs from prosecuting Released Claims against Released Persons.

B.      "Court" means the Court having jurisdiction of the Lawsuit, at any stage, presently the United States District Court for the Eastern District of Pennsylvania.

C.      "Covered Period" means: (1) for Opt-In Plaintiffs who worked outside of California and New York, the period beginning three years prior to the filing of that individual's written consent to join the Lawsuit and ending on the date of execution of this Settlement Agreement; (2) for Opt-In Plaintiffs who worked in California, the period beginning four years prior to the filing of that individual's written consent to join the Lawsuit and ending on the date of execution of this Settlement Agreement; and (3) for Opt-In Plaintiffs who worked in New York, the period beginning six years prior to the filing of that individual's written consent to join the Lawsuit and ending on the date of execution of this Settlement Agreement. Opt-In Plaintiffs who filed their consent form after January 30, 2017 shall have a period of 163 additional days added to the Covered Period set forth in subparagraph (1), in recognition of the parties' tolling agreements entered in this Litigation.

D.      "Defendant" means BI, Incorporated.

E.      "Defense Counsel" means Littler Mendelson, P.C.

F.      "Final Effective Date" is the date on which all of the following events and conditions have been met or have occurred: (i) the Court has entered an Approval Order; (ii) the Court has dismissed the Lawsuit with prejudice; and (iii) the time to appeal from the Approval Order has expired and no notice of appeal has been filed (or in the event that an appeal is filed, the first day after the appellate process is exhausted and the Approval Order has remained intact in all material respects).

G.      "Lawsuit" means the legal action commenced in the United States District Court for the Eastern District of Pennsylvania on or about June 2, 2016, which is presently captioned as *Alvarez, et al. v. BI, Incorporated*, No. 2:16-cv-02705-MSG (E.D. Pa.).

H.      "Named Plaintiffs" refers to Karel Alvarez and Juan Tellado. Each is also individually referred to herein as a "Named Plaintiff." Named Plaintiffs are included within the definition of Opt-In Plaintiffs.

I.      "Net Settlement Amount" means the Total Settlement Amount minus the amount the Court approves for Plaintiffs' Counsel's Fees and Costs, Named Plaintiffs' Service Payment, and the employer's share of all required taxes (*e.g.* FICA and FUTA and any state or local taxes) on each Settlement Payment.

J.      "Opt-In Plaintiffs" means all individuals who filed (and did not withdraw) a written consent to join the Lawsuit, as reflected on the Court's docket, including the Named Plaintiffs. The Opt-In Plaintiffs are identified by name and employee identification number on Exhibit B hereto.

K.     "Plaintiffs' Counsel" refers to Berger Montague PC and Willig, Williams & Davidson.

L.     "Plaintiffs' Counsel's Fees and Costs" means the total amount of Named Plaintiffs and Opt-In Plaintiffs' attorney's fees, costs and other expenses, as set forth herein in Section III.C, and to be approved by the Court upon application by Plaintiffs' Counsel.

M.     "Parties" refers to Named Plaintiffs, Opt-In Plaintiffs and Defendant and, in the singular, refers to any of them, as the context makes apparent.

N.     "Released Claims" collectively refers to the claims released by Named Plaintiffs and Opt-In Plaintiffs in exchange for their Settlement Payment and the claims released by the Named Plaintiffs in exchange for their Service Payment, as those claims are defined in Section III.F.

O.     "Released Persons" means and includes: (i) Defendant; (ii) The GEO Group, Inc.; (iii) all related companies, parent companies, subsidiaries, divisions, businesses, holding companies, affiliates, partnerships, limited partnerships, successors, predecessors, and assigns of Defendant and The GEO Group, Inc.; (iv) the present and former officers, directors, trustees, conservators, employees, contractors, representatives, shareholders, stockholders, owners, heirs, devisees, legatees, executors, administrators, insurers, attorneys and agents of any of the entities identified in this paragraph; and (v) any other persons or entities acting by, through, under, or in concert with any of the persons or entities listed in this paragraph.

P.     "Service Payment" means the amount to be approved by the Court for payment to Named Plaintiffs in recognition of their efforts in bringing this Lawsuit on behalf of themselves and the collective group, in an amount not to exceed Fifteen Thousand Dollars ($15,000) to each Named Plaintiff, for a total Service Payment of no more than Thirty Thousand Dollars ($30,000), as set forth in Section III.D.

Q.     "Settlement Notice" refers to the notice substantially in the form of Exhibit A that will be sent to the Opt-In Plaintiffs.

R.     "Settlement Payment" refers to the payment to which an individual who is a Named Plaintiff or Opt-In Plaintiff is entitled pursuant to and in accordance with this Settlement Agreement. The amount of each Settlement Payment was calculated pursuant to the terms set forth herein in Section III.E.

S.     "Total Settlement Amount" means Eight Hundred Thousand Dollars ($800,000). The Total Settlement Amount represents the maximum amount that Defendant will pay pursuant to this Settlement Agreement, subject to Court approval, and inclusive of (i) the Settlement Payments to each of the Named Plaintiffs and Opt-In Plaintiffs; (ii) the employer's share of all required taxes (e.g. FICA and FUTA and any state or local taxes) on the Settlement Payments; (iii) Plaintiffs' Counsel's Fees and Costs; and (iv) the Service Payment to the Named Plaintiffs. Defendant shall not be called upon or required to pay additional monies above the Total Settlement Amount in connection with this Settlement Agreement under any circumstances, with the sole exceptions of the payment of administration costs (if any) and Defense Counsel's fees.

Any interest earned on the Total Settlement Amount during the period of settlement administration under this Settlement Agreement will remain Defendant's sole and exclusive property. The Total Settlement Amount shall not be segregated and may remain in Defendant's general funds until distributed in accordance with this Settlement Agreement. The Total Settlement Amount is non-reversionary.

## III.   TERMS OF SETTLEMENT

A.    As soon as practicable after the Settlement Agreement is executed by Named Plaintiffs (on behalf of themselves and all Opt-In Plaintiffs), Defendant, and counsel for the Parties, Named Plaintiffs shall submit this Settlement Agreement to the Court for approval and shall request entry of an Approval Order utilizing a mutually acceptable form of motion. Except to the extent provided below with respect to the termination of this Settlement Agreement, the Parties agree to use their best efforts to secure an Approval Order from the Court.

B.    Payments made under this Settlement Agreement are not intended to and will not: (1) form the basis for additional contributions to, benefits under, or any other monetary entitlements under; (2) count as earnings or compensation with respect to; or (3) be considered to apply to, or be applied for purposes of, any bonus, pension, 401(k) and/or other retirement or benefits plans or similar programs of any of the Released Persons.

C.    Plaintiffs' Counsel's Fees and Costs

1.    Plaintiffs' Counsel may make an application to the Court for an award of Plaintiffs' Counsel's Fees and Costs in an amount not to exceed Three Hundred and Fifty Thousand Dollars ($350,000). Such application shall be filed in connection with Named Plaintiffs' request for entry of an Approval Order. Defendant will not oppose said application to the extent it does not request an amount in excess of Three Hundred and Fifty Thousand Dollars ($350,000), and it is otherwise consistent with the terms set forth in this Settlement Agreement.

2.    Plaintiffs' Counsel's Fees and Costs are intended to compensate Plaintiffs' Counsel for all work performed in the Lawsuit as of the date of this Settlement Agreement as well as all of the work remaining to be performed, including but not limited to documenting the settlement, securing Court approval of the settlement, making sure that the settlement is fairly administered and implemented, and obtaining final dismissal of the Lawsuit.

3.    In the event that the Court awards Plaintiffs' Counsel less than the amount listed above for Plaintiffs' Counsel's Fees and Costs, (i) such ruling shall not provide a basis for terminating the Settlement Agreement; (ii) only the reduced amount will be deemed to be Plaintiffs' Counsel's Fees and Costs; and (iii) the difference between the requested amount and the awarded amount shall be allocated to the Net Settlement Amount.

4.    Payment of Plaintiffs' Counsel's Fees and Costs shall be made within twenty-one (21) days after: (a) the Final Effective Date; (b) the date on which Berger Montague PC provides Defendant with a W-9. Plaintiffs' Counsel's Fees and Costs will be paid in the form of a single check made payable to Berger Montague PC. Defendant shall issue an IRS Form 1099 to Berger Montague PC in connection with this Plaintiffs' Counsel's Fees and Costs payment.

5.      Payment of such Plaintiffs' Counsel's Fees and Costs to Plaintiffs' Counsel, as set forth in this Settlement Agreement, shall constitute full satisfaction of any and all obligations by Released Persons to pay any person, attorney or law firm (including but not limited to Plaintiffs' Counsel) for attorney's fees, expenses or costs (including but not limited to any fees, costs and expenses related to testifying and non-testifying experts and consultants) incurred on behalf of Named Plaintiffs and Opt-In Plaintiffs and shall relieve Released Persons of any other claims or liability to any person for any attorney's fees, expenses, and costs to which any person may claim to be entitled on behalf of any Named Plaintiffs and Opt-In Plaintiffs relating to this Lawsuit. Upon payment of Plaintiffs' Counsel's Fees and Costs hereunder, Named Plaintiffs and Opt-In Plaintiffs shall be deemed to have released Defendant and Released Persons from any and all claims for prevailing party attorney's fees, expenses, and costs relating to this Lawsuit.

D.      Named Plaintiffs' Service Payment

1.      Plaintiffs' Counsel may also make an application to the Court for one-time Service Payment in an amount not to exceed Thirty Thousand Dollars ($30,000) in total, allocated as follows: no more than Fifteen Thousand Dollars ($15,000) each to Karel Alvarez and Juan Tellado. Defendant will not oppose such application. The final amount of each individual Service Payment (in amounts not to exceed the amounts set forth above) shall be determined by the Court.

2.      The Service Payment is awarded to Named Plaintiffs for their efforts in bringing and prosecuting this matter, and in consideration of their general release set forth in Section III.F below.

3.      Named Plaintiffs shall each provide Defendant with a W-9, and the Service Payment shall be issued as a separate check and treated as IRS Form 1099 income.

4.      Payment of the Service Payment shall be made within twenty-one (21) days after: (a) the Final Effective Date; (b) the date on which Named Plaintiffs each provide Defendant with a W-9.

5.      In the event that the Court awards Named Plaintiffs less than the amount listed above for a Service Payment, (i) such ruling shall not provide a basis for terminating the Settlement Agreement; (ii) only the reduced amount will be deemed to be Named Plaintiffs' Service Payment; and (iii) the difference between the requested amount and the awarded amount shall be allocated to the Net Settlement Amount.

E.      Settlement Payment

1.      In order to determine the amount of the Settlement Payment for each individual who filed a written consent form to join this Lawsuit, Plaintiffs' Counsel apportioned the Net Settlement Amount among each of the Opt-In Plaintiffs as follows:

a.      First, each individual was allocated $100 prior to the determination of *pro rata* individual settlement shares so that each of the Opt-In Plaintiffs receives at least $100 in exchange for his/her release in this Settlement Agreement.

b.　Second, the total number of settlement shares for each individual were calculated as follows:

(1)　Opt-In Plaintiffs shall receive settlement shares equal to the total number of weeks between their start and end dates of work performed for Defendant during their Covered Period.

(2)　Opt-In Plaintiffs who performed work in California shall have the total settlement shares identified in paragraph 1(b)(1) above multiplied by two, in recognition of their release of California state law claims.

(3)　Opt-In Plaintiffs shall receive one additional settlement share for each week in which they worked during their Covered Period prior to March 1, 2015, in recognition of their claims for "on call" work.

c.　The total number of settlement shares was added together and the resulting sum divided into the Net Settlement Amount (less the allocation of $100 per individual who filed a consent form to join this lawsuit) to reach a per share dollar figure. The per share dollar figure was then  multiplied by each individual's number of settlement shares, and added to the $100 allocation to determine the Settlement Payment.

2.　For Named Plaintiffs and Opt-In Plaintiffs who worked outside of California, fifty percent (50%) of each Settlement Payment shall be allocated to the claims asserted in the Lawsuit for unpaid compensation and any other wage-related damage**s**, and fifty percent (50%) shall be allocated to the claims asserted in the Lawsuit for non-wage penalties, liquidated damages, and other relief.

3.　For Opt-In Plaintiffs who worked in California, thirty percent (30%) of each Settlement Payment allocated to the claims asserted in the Lawsuit for unpaid compensation and any other wage-related damage**s,** and seventy percent (70%) shall be allocated to the claims asserted in the Lawsuit for non-wage penalties, liquidated damages, and other relief.

4.　The portion allocated to claims for unpaid overtime compensation and other wage-related damages shall be paid by separate check and subject to (1) all required employee paid payroll taxes and deductions (*e.g.*, federal, state, and local income taxes, employee's share of FICA taxes, and other state-specific statutory deductions); (2) all legally required or court-ordered withholdings (e.g., garnishments); and (3) IRS Form W-2 reporting.

5.　The portion allocated to liquidated damages and other relief shall be paid by separate check, characterized as non-wage income to the recipient, and shall be subject to (1) all legally required or court-ordered withholdings (e.g., garnishments); and (2) IRS Form 1099 reporting.

6.　Named Plaintiffs and Opt-In Plaintiffs shall be solely responsible for the reporting and payment of their share of any federal, state and/or local taxes on payments received pursuant to this Settlement Agreement.

7.     All Settlement Payment determinations are based exclusively upon available employment data provided by BI for the Opt-In Plaintiffs.

8.     Defendant shall deliver checks for the Settlement Payments to Berger Montague PC within twenty-one (21) days after the Final Effective Date. Defendant may elect, at its own expense, to use a settlement administrator to handle processing of Settlement Payments and related taxes, and in such case, the settlement administrator shall send the Settlement Payments to Berger Montague PC within the timelines set forth in this paragraph.

9.     Each Settlement Payment check will contain the following limited endorsement, to satisfy any applicable procedural protocols under the FLSA:

> By endorsing or cashing this check, I confirm: I am an opt-in plaintiff in *Alvarez v. BI, Incorporated*, No. 2:16-cv-02705 (E.D. Pa.), I authorized Plaintiffs and their attorneys to negotiate a Settlement Agreement in that case, and I understand I am bound by that agreement, including its release.

The front of each settlement check shall include the following statement: "POSITIVE I.D. AND SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED."

10.     Within ten (10) business days after Defendant delivers the Settlement Payment checks to Plaintiffs' Counsel, Plaintiffs' Counsel will distribute to the Named Plaintiffs and Opt-In Plaintiffs via First Class Mail: (a) a notice of settlement (in the form provided in Exhibit A); (b) a copy of this Settlement Agreement; (c) a copy of the Approval Order; and (d) the individual's Settlement Payment checks.

11.     Named Plaintiffs and Opt-In Plaintiffs are members of and bound by the terms of this settlement by operation of the written consent to join the Lawsuit form they signed and filed with the court, and this Settlement Agreement. Named Plaintiffs and Opt-In Plaintiffs are not required to submit a claim form in order to receive their Settlement Payments.  Named Plaintiffs and Opt-In Plaintiffs shall be bound by the terms of this settlement even if they fail to timely negotiate their settlement checks.

12.     All Settlement Payment and Service Payment checks issued will be valid and negotiable for a period of one hundred eighty (180) days from the day of their printing.  BI will maintain copies of all negotiated checks and shall prepare and send a report to Plaintiffs' counsel after 135 days into the check-cashing period, and at the conclusion of the 180-day check-cashing period, listing the names of all Opt-In Plaintiffs who signed, deposited and/or cashed their settlement checks.  After one hundred eighty (180) days, Defendant will stop payments on any checks that have not been negotiated in order to facilitate the Parties' agreed-upon *cy pres* distribution.

13.     If one or more Named Plaintiffs or Opt-In Plaintiffs come forward before their Settlement Payment has been distributed to the *cy-pres* recipient, and asserts that their settlement checks were not delivered or were lost, and if Defendant is able to confirm that the individual's original checks have not been cashed and can be cancelled, Defendant shall cancel and/or place a "Stop Payment Order" on the individual's original checks. Defendant will issue

new checks to the individual (in the original amount less any expenses incurred by Defendant to cancel the original checks and issue the new checks) once Defendant has confirmed that the original checks have been cancelled. Any failure of any individual to deposit a check shall not affect the enforceability of the release of their claims, as the Parties jointly agree that valid consideration for same is the offer of monetary consideration by means of the offer of settlement and mailing of settlement checks.

14. Subject to the Court's approval in the Approval Order, any part of the Total Settlement Amount that is not distributed and claimed within one hundred and eighty (180) days pursuant to this Settlement Agreement shall be given to the Parties' agreed-upon *cy-pres* recipient, the Community Legal Services of Philadelphia.

15. To facilitate any payment to the *cy-pres* recipient, Defendant will prepare and send to Plaintiffs' Counsel a summary of unclaimed funds within thirty (30) business days after the one hundred and eighty (180) day window closes for Named Plaintiffs and Opt-In Plaintiffs to negotiate their Settlement Payment and Service Payment checks. Defendant shall send the check in the total amount of unclaimed funds, made payable to Community Legal Services of Philadelphia within forty (40) business days after the one hundred and eighty (180) day window closes, with a copy of the correspondence and check sent to Berger Montague.

F.     RELEASE OF CLAIMS; WAIVER; ASSIGNMENT OF RIGHTS.

1.     Release of Claims by Opt-In Plaintiffs.

a.     By operation of this Settlement Agreement and the Approval Order, and except as provided in Section III.F.1.b, Opt-In Plaintiffs, individually and for themselves and their successors, assigns, heirs, executors, administrators, agents, representatives, businesses, insurers, subrogees, attorneys, and any other person or entities acting by, through, under or in concert with any of them, irrevocably and unconditionally forever and fully release and covenant not to sue or otherwise pursue claims against Defendant and all Released Persons from all wage and hour claims, including but not limited to claims under the FLSA, Pennsylvania state law (including 43 P.S. §§ 333.104(a), .104(c), and .108; and 34 PA. CODE §§ 231.1(b), 231.21(b), 231.41, 231.31, and 231.43(b)), New York state law (including N.Y. COMP. CODES. R. & REGS. tit. 12, § 142-2.2), California state law (including Labor Code sections 201-203, 226(a) and (e), 226.7, 510, 512, and 1194; CAL. CODE REGS. tit. 8, § 11040; CAL. BUS. & PROF. CODE § 17200, *et seq.*; and California Code of Civil Procedure § 1021.5), or any other federal, state or local wage and hour law, pertaining to the alleged failure to pay for all hours worked, claims for unpaid wages (including overtime compensation), claims for working through meal or rest periods, and related claims for liquidated damages, interests, penalties, fees or costs, based on any act or omission that occurred prior to and including the date of the Settlement Agreement, even if presently unknown, that were or could have been asserted in the Lawsuit based upon the facts alleged in the operative complaint or in the proposed amended complaint provided by Plaintiffs' Counsel to Defense Counsel on February 15, 2019. Opt-In Plaintiffs hereby expressly waive and relinquish any and all claims, rights or benefits that they may have under California Civil Code § 1542, which provides as follows:

*A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release which if known by him or her must have materially affected his or her settlement with the debtor*.

        b.     Notwithstanding the foregoing provisions of Section III.F.1.a, the RELEASED CLAIMS do not include: (i) claims to enforce rights that are created by virtue of this Settlement Agreement; (ii) any claim that they could make for unemployment compensation or workers' compensation; (iii) any rights or claims that cannot be released as a matter of law pursuant to this Settlement Agreement and/or the APPROVAL ORDER; and (iv) any rights or claims that may arise after the date of this Settlement Agreement.

        c.     Opt-In Plaintiffs further covenant and agree that, since they are settling disputed claims, they will not accept, recover or receive any back pay, liquidated damages, other damages, penalties, or any other form of relief based on any of the Released Claims asserted or settled in the Lawsuit that may arise out of, or in connection with any other individual, representative, class, or collective action, or any administrative remedies pursued by any individual(s) or any federal, state or local governmental agency against any of the Released Persons.

        d.     Opt-In Plaintiffs further acknowledge that they shall be enjoined from pursuing any Released Claims that any Opt-In Plaintiffs has, had, might have or might have had against any of the Released Persons based on any act or omission that occurred up to and including the date of this Settlement Agreement.

        e.     Opt-In Plaintiffs acknowledge that their waiver and release of rights and claims as set forth in this Settlement Agreement are in exchange for valuable consideration. Opt-In Plaintiffs understand, agree, and intend that, upon receipt of the payments by Defendant referred to herein, they will have received complete satisfaction of any and all Released Claims.

        f.     Opt-In Plaintiffs have not assigned or transferred, or purported to assign or transfer, to any person or entity, any of the Released Claims or any portion thereof or interest therein, including but not limited to, any interest in the Lawsuit, or any related action.

        2.     Release of Claims by Named Plaintiffs.

        a.     By operation of this Settlement Agreement and the Approval Order, and except as provided in Section III.F.2.b, each Named Plaintiff, individually and for himself and his successors, assigns, heirs, executors, administrators, agents, representatives, businesses, insurers, subrogees, attorneys, and any other person or entities acting by, through, under or in concert with any of them, does hereby irrevocably and unconditionally release, acquit, and forever discharge Defendant and all Released Persons from any and all charges, complaints, claims, liabilities, causes of action, damages and expenses (including attorney's fees, expenses, costs actually incurred, liquidated damages and interest), of any kind, whether known or unknown, which they now have, may have or claim to have, or which they at any prior time had or claimed to have against Defendant or any of the Released Persons, arising out of any matter occurring or

accruing on or at any time before the date each Named Plaintiff signs this Settlement Agreement. This release and waiver includes, but is not limited to, any claims arising from each Named Plaintiff's employment and/or contractual relationship, or the termination of his employment and/or contractual relationship (if applicable), with Defendant and/or any of the Released Persons. This release and waiver includes, but is not limited to: claims arising under federal law, including claims under the Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, the Fair Labor Standards Act; claims arising under the laws of any state, including any local law, regulation, statute and/or ordinance operational in any state; claims arising under common law, tort, policy or contract; claims for retaliation, defamation, libel, slander, invasion of privacy, or negligence; claims based on theories of strict liability or respondeat superior; claims for costs, fees, interest, expenses, or attorney's fees; claims that were asserted or that could have been asserted in this Lawsuit; and any other claims of any kind, except as expressly excluded elsewhere in this Settlement Agreement

          b.    Notwithstanding the foregoing provisions of Section III.F.2.a., each Named Plaintiff does not release or waive: (i) any claim under the Age Discrimination in Employment Act; (ii) any claim that he could make for unemployment compensation or workers' compensation benefits; (iii) any rights or claims that cannot be released as a matter of law pursuant to this Settlement Agreement and/or the Approval Order; (iv) his right to file an administrative charge with the National Labor Relations Board, Equal Employment Opportunity Commission or similar state agency (although he does waive his right to receive any monetary damages or other relief not explicitly provided for herein as a result of any such charge, to the extent the charge pertains to a claim that was released); and/or (v) any rights or claims that may arise after the date he signs this Settlement Agreement.

          c.    By signing this Settlement Agreement, each Named Plaintiff affirms that he has not filed any other charges, complaints, lawsuits, claims, or actions against Defendant or any of the Released Persons, based on any event that took place prior to the date he signs this Settlement Agreement, except as expressly disclosed in this Settlement Agreement. In the event one or both Named Plaintiffs have filed such outstanding charge, complaint, claim, or action, they agree to execute such papers or documents as Defendant determine may be necessary to have such charge, complaint, claim, or action withdrawn and dismissed with prejudice

     G.    MEDIA AND CONFIDENTIALITY OBLIGATIONS.

          1.    The Parties and their counsel agree that they will not issue a press release, hold a press conference, make a public announcement (other than the filings with the Court or communications with Opt-In Plaintiffs), or initiate contact with a member of the press about this Lawsuit, the facts and allegations in the operative complaint or the proposed amended complaint, or the amount or terms of this Settlement Agreement.

          2.    Plaintiffs' Counsel agrees that they will not post information to their respective firm websites about this Lawsuit prior to forty-five (45) days from the date on which the Court approves the Settlement Agreement and dismisses the Lawsuit with prejudice, and after that date, will restrict information about the Lawsuit included on their law firm website to information included in the motion for approval.

3.    If the Parties are contacted by the press about the Settlement, they will respond only that the case has been resolved. Nothing in this provision will affect the ability of Plaintiffs' Counsel to carry out their duties consistent with and as required by any other provision in this Settlement Agreement, or by the Court, or affect Plaintiffs' Counsel's attorney-client communications with the Opt-In Plaintiffs.

4.    After the dismissal of the Lawsuit and after the statute of limitations has run on all claims that were and/or could have been asserted in the Lawsuit by and/or on behalf of Opt-In Plaintiffs and all claims related to the conduct of the Lawsuit and administration of the Settlement Agreement (the "Retention Period"), Opt-In Plaintiffs and Plaintiffs' Counsel shall destroy any and all documents produced in this matter and designated as "Confidential" by Defendant in conjunction with the Lawsuit, and they shall not retain any copies. Within twenty-one (21) days following the conclusion of the Retention Period, Plaintiffs' Counsel shall send confirmation to Defense Counsel of their compliance with this Paragraph. The Parties, Plaintiffs' Counsel, and Defense Counsel remain bound by the obligations set forth in the Stipulated Confidentiality Agreement and Protective Order filed at Docket No. 17.

H.    TERMINATION OF THE SETTLEMENT AGREEMENT.

1.    GROUNDS FOR SETTLEMENT TERMINATION. Any Party may terminate the Settlement Agreement if the Court declines to enter the Approval Order or judgment in the form submitted by the Parties, a Court of Appeal reverses the entry of the Approval Order or judgment, or the settlement as agreed does not become final for any other reason, provided, the Parties agree to work cooperatively and in good faith, for a period of fourteen (14) calendar days to address and resolve any concerns identified by the Court or a Court of Appeal in declining to enter the Approval Order or judgment in the form submitted by the Parties. If the Court does not approve the full amounts requested in Sections III.C or III.D, this shall not be a basis for terminating the Settlement Agreement.

2.    PROCEDURES FOR TERMINATION. To terminate this Settlement Agreement as specified above, the terminating Party shall give written notice to the other Party no later than fifteen (15) business days after the terminating Party learns that the applicable ground for termination has been satisfied.

3.    EFFECT OF TERMINATION. In the event that this Settlement Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the Lawsuit is barred by operation of law, is invalidated, is not approved or otherwise is ordered not to be carried out by any Court:

a.    The Settlement Agreement shall have no force or effect, and no Party shall be bound by any of its terms with respect to the terminating Parties;

b.    Defendant shall have no obligation to make any payments to Named Plaintiffs, Opt-In Plaintiffs or Plaintiffs' Counsel;

c.    Any Approval Order and judgment shall be vacated;

13

       d.     The Settlement Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Lawsuit prior to the settlement;

       e.     Neither this Settlement Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Lawsuit or any other action for any purpose whatsoever; and

       f.     Defendant shall reserve the right to move to decertify any certified FLSA collective action should the Settlement Agreement not become final.

I.     PARTIES' AUTHORITY

       1.     The signatories to this Settlement Agreement represent that they are fully authorized to enter into this Settlement Agreement on behalf of themselves or their respective principals and to bind the respective Parties hereto to the terms and conditions of this Settlement Agreement.

       2.     Named Plaintiffs represent that, consistent with the language set forth in the consent forms filed by the Opt-In Plaintiffs, they are, together with Plaintiffs' Counsel, fully authorized to bind the Opt-In Plaintiffs to all terms set forth in this Settlement Agreement.

       3.     The Notice of Settlement, attached hereto as Exhibit A, will inform all Opt-In Plaintiffs of the binding nature of this Settlement Agreement and that it will have the same force and effect as if this Settlement Agreement were executed by each of the Opt-In Plaintiffs.

J.     MUTUAL FULL COOPERATION. The Parties agree to fully cooperate with each other to accomplish the terms of the Settlement Agreement, including, but not limited to, to execute such documents and to take such other action as may reasonably be necessary to implement the terms of the Settlement Agreement. The Parties to the Settlement Agreement shall use their best efforts, including all efforts contemplated by the Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the Settlement Agreement and the terms set forth herein. As soon as practicable after execution of the Settlement Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and their counsel, take all necessary steps to secure the Court's Approval Order.

K.     NOTICE. Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

<u>To the Opt-In Plaintiffs:</u>

       Sarah R. Schalman-Bergen
       sschalman-bergen@bm.net
       BERGER MONTAGUE PC
       1818 Market St., Suite 3600

Philadelphia, PA 19103

Ryan Allen Hancock
rhancock@wwdlaw.com
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

To the Defendant:

Robert W. Pritchard
Rpritchard@littler.com
Joshua C. Vaughn
Jvaughn@littler.com
LITTLER MENDELSON, P.C.
625 Liberty Ave., 26th Floor
Pittsburgh, PA 15222

L.    CONSTRUCTION AND INTERPRETATION

1.    The Parties hereto agree that the terms and conditions of the Settlement Agreement are the result of lengthy, intensive, arms-length negotiations among the Parties, and the Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her or its counsel participated in the drafting of the Settlement Agreement.

2.    Section titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or an of its provisions. Each term of this Settlement Agreement is contractual and not merely a recital.

3.    This Settlement Agreement shall be subject to and governed by the laws of the State of Pennsylvania and subject to the continuing jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

M.    MISCELLANEOUS

1.    The Settlement Agreement may be executed in counterparts, and when each designated signatory has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

2.    The Settlement Agreement must be executed by the Named Plaintiffs, as well as by an authorized representative of Plaintiffs' Counsel and an authorized representative of Defendant, before being presented to the Court.

15

3.      This Settlement Agreement sets forth the entire agreement between the Parties hereto and fully supersedes any and all prior agreements or understandings, written or oral, between the Parties pertaining to the subject matter hereof, including, but not limited to, any and all written and oral agreements reached between the Parties during the negotiations that resulted in this Settlement Agreement.

4.      This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

5.      This Settlement Agreement is made and shall be enforced as provided under the laws of the Commonwealth of Pennsylvania.

6.      No rights hereunder may be waived or modified except in a writing signed by duly authorized representatives of the Parties.

7.      The waiver of rights found in Section III.F of this Settlement Agreement is an essential part of the Parties' agreement. If any provision of Section III.F is found by any court or governmental agency to be unlawful or unenforceable, Defendant shall have no obligations under the Settlement Agreement.

8.      In the event of a dispute concerning the rights or obligations under the Settlement Agreement, counsel for the Parties shall first meet and confer in a good faith attempt to resolve the matter.

9.      The Opt-In Plaintiffs may not withdraw their written consents to join this action between the date on which this Settlement Agreement is fully executed and the date on which the Court enters an order adjudicating Named Plaintiff's motion for entry of the Approval Order.  The Named Plaintiffs, Plaintiffs' Counsel, and Defense Counsel agree to not encourage or solicit persons to exclude themselves from the settlement class or object to the settlement.

10.      The Named Plaintiffs, Plaintiffs' Counsel, and Defense Counsel agree that they shall not discourage Opt-In Plaintiffs from participating in the settlement or cashing their settlement check.

11.      Named Plaintiffs KAREL ALVAREZ AND JUAN TELLADO REPRESENT THAT THEY EACH HAVE CAREFULLY READ AND FULLY UNDERSTAND THE PROVISIONS OF THIS SETTLEMENT AGREEMENT AND THAT THEY HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY, VOLUNTARILY, AND WITHOUT THREAT OR DURESS.

**[REMAINDER OF PAGE INTENTIONALLY BLANK – SIGNATURES TO FOLLOW]**

WHEREFORE, the Parties have read all of the foregoing, understand the same, and agree to all of the provisions contained herein.

**FOR OPT-IN PLAINTIFFS:**

Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
BERGER MONTAGUE PC

Dated: 9/18/19

Ryan A. Hancock
Willig, Williams & Davidson

Dated: 9/18/2019

**FOR KAREL ALVAREZ AND THE OPT-IN PLAINTIFFS:**

Karel Alvarez

Dated: 9/18/2019

**FOR JUAN TELLADO AND THE OPT-IN PLAINTIFFS:**

Juan Tellado

Dated: 9/18/2019

**FOR BI, INCORPORATED**

_____     Dated: _4/22/19_
Robert W. Pritchard
Joshua C. Vaughn
LITTLER MENDELSON P.C.


_____     Dated: 9/17/19
By: CHERYL WILKE
Title: VICE PRESIDENT, CORPORATE COUNSEL
BI, INCORPORATED

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KAREL ALVAREZ and JUAN TELLADO, individually and on behalf of all persons similarly situated, | : <br> : CIVIL ACTION NO.: 2:16-cv-02705-MSG <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : <br> : |
| BI, INCORPORATED, | : <br> : |
| Defendant. | : |

**NOTICE OF COLLECTIVE ACTION SETTLEMENT
AND SETTLEMENT CHECK**

TO:     [Opt-In Plaintiffs' Name]
        [Address]

*The Court authorized this Notice of Collective Action Settlement and Settlement Check.
This is not a solicitation.
This is not a lawsuit against you and you are not being sued.*

**PLEASE READ THIS NOTICE CAREFULLY.**

| 1. | **Why Should You Read This Notice?** |
|---|---|

You received this Notice because you opted in to the *Alvarez, et al. v. BI, Incorporated*, No. 2:16-cv-02705-MSG (E.D. Pa.) lawsuit, which alleges that ISAP Case Specialists who worked for BI, Incorporated ("BI") were not paid all of the wages (including overtime compensation) to which they were entitled.

The Parties agreed to settle this lawsuit on behalf of a collective of the 103 current and former ISAP Case Specialists who filed consent forms to join the lawsuit ("Opt-in Plaintiffs").

On [DATE], the Court approved the Settlement as fair and reasonable.

This Notice explains the terms of the settlement, your settlement check, and your release of claims under the settlement.

| **2.** | **The Settlement Agreement and Your Settlement Check** |
|---|---|

A copy of the Settlement Agreement is enclosed with this Notice.

**Your settlement checks are enclosed. Please note that your checks will automatically expire on [DATE]**. Therefore, please cash or deposit your checks AS SOON AS POSSIBLE.

The amount of your settlement checks have been calculated pursuant to the terms of the Settlement Agreement and based on BI's records. Your checks represents your *pro rata* portion of the settlement funds.

The settlement provides that Four Hundred Fifty Thousand Dollars ($450,000.00) shall be paid to all of the individuals who joined the lawsuit. This amount includes service awards of $15,000 each to Plaintiffs Karel Alvarez and Juan Tellado for their service in representing the Collective, and the employer's share of all required payroll taxes. The remaining amount has been be divided among the Opt-In Plaintiffs.

Your settlement payment has been calculated based on BI's records.
Your check represents your *pro rata* portion of the settlement fund calculated as follows:

[INSERT FORMULA APPROVED BY COURT]

**For Opt-In Plaintiffs who worked outside of California**, fifty percent (50%) your Settlement Payment shall be treated as back wages. The remaining fifty percent (50%) of each Settlement Payment shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes.

**For Opt-In Plaintiffs who worked in California**, thirty percent (30%) your Settlement Payment shall be treated as back wages. The remaining seventy percent (70%) of each Settlement Payment shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes.

We cannot provide you with any tax advice, and you should contact your accountant or tax related advisors for any questions about taxes you may owe on these amounts.

| **3.** | **Release** |
|---|---|

When you filed your consent form to opt-in to this lawsuit, you authorized the named plaintiffs and plaintiff's attorneys to act as your agents to prosecute this lawsuit on your behalf, and, as appropriate, to negotiate a settlement of any and all claims you have against BI, the GEO Group, Inc., and any other Released Person (as that term is defined in the Settlement Agreement).

The Settlement Agreement includes a release of claims. You released any and all claims against BI, The GEO Group, Inc., and any other Released Person (as that term is defined in the Settlement Agreement) from all state and federal wage and hour claims, known or unknown, for unpaid wages or overtime that were or could have been asserted in this lawsuit based upon the facts

alleged in the filed Complaint during your work as an ISAP Case Specialist for BI and all of its past and present parent companies, investors in any of those companies, controlling persons, subsidiaries, directors, and officers, including, without limitation, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorney's fees, costs, and expenses based on any act or omission that occurred prior to and including [insert the date of the Settlement Agreement].

| **4.** | **Should I Cash This Check If I Am Currently Working For BI?** |

Yes. You are entitled to cash your settlement check since it was paid in consideration for your release of claims as set forth in the Settlement Agreement. Your decision to cash your check will in no way affect your employment at BI.

| **5.** | **Do I Have To Pay The Attorneys Who Represented The Named And Opt-In Plaintiffs?** |

No. You do not have to pay the attorneys who represent the plaintiffs. The Court approved the amount of attorneys' fees and costs to be paid to the attorneys who represented you in this lawsuit.

Plaintiffs and the Opt-In Plaintiffs are represented by the following attorneys:

Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3033
Facsimile: (215) 875-4620
Email: crodriguez@bm.net
Website: www.bergermontague.com

Ryan Allen Hancock
**WILLIG, WILLIAMS, & DAVIDSON**
1845 Walnut Street 24th Floor
Philadelphia, PA 19103
Telephone (215) 656-3600
rhancock@wwdlaw.com
Website: www.wwdlaw.com

| **6.** | **Who May I Contact If I Have Further Questions?** |

IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS, you may contact Plaintiffs' Counsel at the law firm of Berger Montague at (215) 875-3033 or sklipa@bm.net.

This Notice only summarizes the Lawsuit, the settlement, and related matters. For more information, you may inspect the Court files at the Office of the Clerk, United States District Court located at United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, PA 19106, from 8:30 a.m. to 4:30 p.m., Monday through Friday.

**PLEASE DO NOT CONTACT THE COURT.**

## EXHIBIT B

|    | EEID   | Opt-In Plaintiff Name       |
|----|--------|-----------------------------|
| 1  | 202500 | ACEVEDO,ARIANNA             |
| 2  | 174991 | ACOSTA,BENJAMIN             |
| 3  | 202142 | ACOSTA,VERONICA D           |
| 4  | 178002 | AGUILAR,ADRIAN              |
| 5  | 173157 | ALVAREZ,KAREL               |
| 6  | 202999 | ANDRADE,YVETTE              |
| 7  | 199375 | AYALA,ALEXIS                |
| 8  | 214598 | AYALA,AQUILA NORCA          |
| 9  | 186276 | BALDERRAMOS,ERICK           |
| 10 | 202591 | BAUZA,CARISA                |
| 11 | 194956 | BOWLES,JACY                 |
| 12 | 212210 | BRIDGES,NICOLE              |
| 13 | 199425 | BROWN,ANGELICA              |
| 14 | 182566 | BRUGATO,FREDERICO           |
| 15 | 195197 | CAAMAL,ALYSA                |
| 16 | 201687 | CABEZAS,JOHANNA P           |
| 17 | 203730 | CAEZ-RODRIGUEZ,MARYSOL      |
| 18 | 193037 | CALDERON-CARDENAS,BIBIANA   |
| 19 | 195576 | CARBAJAL VEGA,ARIANA        |
| 20 | 202374 | CARDENAS,GIOVANNY           |
| 21 | 213363 | CARRILLO,OTTO               |
| 22 | 192575 | CHACON,DIANA                |
| 23 | 201911 | CHARLES,LORNA               |
| 24 | 196591 | CHAVARRIA,CHRISTOPHER       |
| 25 | 202046 | CHEVRESTT,VERONICA          |
| 26 | 176203 | COLETTA,CLAUDIA A           |
| 27 | 196149 | COLOMA,RONALD               |
| 28 | 202992 | COLON,JOANNA                |
| 29 | 214531 | CORTEZ,DENISSE              |
| 30 | 198444 | CORTINA,OSCAR               |
| 31 | 171812 | CRUZ,EDWIN                  |
| 32 | 185560 | DE ALBA,RICARDO             |
| 33 | 193847 | DE LEON,ANGELICA            |
| 34 | 187947 | DIAZ,NATALIA                |
| 35 | 195319 | DIAZ,STEFANI                |
| 36 | 201665 | DIXON,DIANE M               |
| 37 | 186125 | DOMINGUEZ,GIAN              |

| 38 | 204223 | ESCAMILLA,ARMANDO |
|----|--------|-------------------|
| 39 | 192590 | FARRUGGIA,BRIAN |
| 40 | 202305 | FLORES,MARISOL |
| 41 | 192163 | GARCIA VILLANUEVA,ILIANA |
| 42 | 202626 | GARCIA,AMARIS |
| 43 | 179982 | GARCIA,FREDDIE |
| 44 | 194970 | GARIBAY,FABIOLA |
| 45 | 185816 | GARIPPA,EVAN |
| 46 | 196893 | GUADALUPE,MARCOS |
| 47 | 202465 | GUTHRIE,KEVIN |
| 48 | 202769 | GUZMAN,DAVID A |
| 49 | 185852 | HEREDIA,ABRAHAM |
| 50 | 212882 | HERNANDEZ,MIRIAM |
| 51 | 202204 | JONES,MABELL I |
| 52 | 202205 | JOSEPH-FRAISE,KIANA |
| 53 | 203748 | KAPLANYAN,NOYEM |
| 54 | 195222 | KUANG,ZI |
| 55 | 172566 | LARA,MICHELLE |
| 56 | 200223 | LIBORIO,RUBY |
| 57 | 208918 | LINARES GRAINGER,CRISTA |
| 58 | 210011 | LOPEZ,CINDY |
| 59 | 210758 | LOPEZ,JAZMINA |
| 60 | 174704 | MACHADO,ELIZABETH |
| 61 | 192566 | MENDOZA,ADRIANA |
| 62 | 179983 | MENDOZA,RANDY |
| 63 | 192251 | MITCHELL,SHAYNE |
| 64 | 202644 | MOHLER,SHAUN |
| 65 | 204229 | MORALES,RONALD |
| 66 | 195933 | NAJERA,RAFAEL |
| 67 | 202009 | NAVARRO,ALEJANDRO |
| 68 | 202997 | NOYOLA,ANTONIO |
| 69 | 204244 | ORTIZ,AYLIN |
| 70 | 179985 | OVALLE,LUIS |
| 71 | 200203 | PESANTES,PAUL |
| 72 | 185568 | PRECIADO-BIBIAN,MERCEDES |
| 73 | 202358 | PRZYBYLA,LOGAN |
| 74 | 196603 | RAMOS,YADIRA |
| 75 | 202325 | RENDUELES,DANIEL |
| 76 | 196200 | RENTERIA,BRENDA |
| 77 | 200208 | RIVERA,ALIALIS |
| 78 | 203750 | RODRIGUEZ,DAISY |

| 79 | 178407 | ROJAS,MARILYN |
| 80 | 210007 | SANTIAGO,FELIX |
| 81 | 213274 | SARACAY,ESTEFANY |
| 82 | 195924 | SAYAGO,ANA |
| 83 | 177549 | SERRANO CRUZ,ERIKA |
| 84 | 196597 | SILVA,CHRISTINE |
| 85 | 191734 | STANT,ADAM |
| 86 | 202223 | TAVAREZ,THATIANA H |
| 87 | 181262 | TELLADO,JUAN |
| 88 | 202288 | TILLOTSON,DONALD A |
| 89 | 202804 | TLILAYATZI,ERIC |
| 90 | 202344 | TOPETE,JOE A |
| 91 | 199871 | TORO,CORALIS |
| 92 | 210866 | TRAYNOR,PATRICK |
| 93 | 202978 | TSCHANETT,LILIANA |
| 94 | 191699 | VALDEZ,SERGIO |
| 95 | 177997 | VALENTINE,SYLVIA R |
| 96 | 181264 | VALENZUELA,JOSE |
| 97 | 195943 | VERA,SELENE |
| 98 | 197811 | WHITECOTTON,SILVIA |
| 99 | 189563 | ZAPATA,MARYANN |
| 100 | 201948 | FELIPE,RICHARD |
| 101 | 212214 | NAPIER,IDELSY |
| 102 | 207605 | MAHR,JENNIFER |
| 103 | 191591 | CENDEJAS,MARIA |
| | Total | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **KAREL ALVAREZ and JUAN TELLADO,** | : | **CIVIL ACTION NO.: 2:16-cv-02705-MSG** |
| **individually and on behalf of all persons** | : | |
| **similarly situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BI, INCORPORATED,** | : | |
| | : | |
| **Defendant.** | : | |

## ADDENDUM TO SETTLEMENT AGREEMENT

Plaintiffs Karel Alvarez and Juan Tellado (together, "Named Plaintiffs"), on behalf of themselves and the Opt-In Plaintiffs, and Defendant BI, Incorporated ("BI" or "Defendant") hereby enter into this Addendum to the Settlement Agreement, which modifies the binding settlement of the collective action lawsuit captioned *Alvarez, et al. v. BI, Incorporated,* No. 2:16-cv-02705-MSG (E.D. Pa.) that the parties entered into and submitted to the Court on October 2, 2019 at Docket Number 87-3 (the "Settlement Agreement," "Settlement" or "Agreement") according to the dictates of the Court's April 7, 2020 Memorandum and Order at Docket Numbers 88-89.

The Parties make the following amendments to the Settlement Agreement:

A.    Section III.F.2, titled "Release of Claims by Named Plaintiffs," including all subsections, is deleted and shall be of no force and effect.  Upon approval by the Court, the Named Plaintiffs shall be bound by the release provisions in Section III.F.1, titled "Release of Claims of Opt-In Plaintiffs," as the Named Plaintiffs are explicitly included in the definition of Opt-In Plaintiffs provided for in Section II.H & J.

B.    Section III.D.2 is modified to read as follows: "The Service Payment is awarded to Named Plaintiffs for their efforts in bringing and prosecuting this matter."

The Addendum to the Settlement Agreement may be executed in counterparts, and when each designated signatory has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, the Settlement Agreement and this Addendum to the Settlement Agreement together shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

WHEREFORE, the Parties have read all of the foregoing, understand the same, and agree to all of the provisions contained herein.

**FOR OPT-IN PLAINTIFFS:**

Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
BERGER MONTAGUE PC

Dated: 5/7/2020

Ryan A. Hancock
Willig, Williams & Davidson

Dated: 5/7/2020

**FOR KAREL ALVAREZ AND THE OPT-IN PLAINTIFFS:**

Karel Alvarez

Dated: 5/7/2020

**FOR JUAN TELLADO AND THE OPT-IN PLAINTIFFS:**

Juan Tellado

Dated: 5/7/2020

2

**FOR BI, INCORPORATED**

_____                    Dated: 5/7/2020
Robert W. Pritchard
Joshua C. Vaughn
LITTLER MENDELSON P.C.

_____                    Dated: 5/7/2020
By: Andrew Stepp
Title: Corporate Counsel
BI, INCORPORATED

3